## In re LAU CAPITAL FUNDING, INC., Debtor.

### Nancy Knupfer, Chapter 7 Trustee, Plaintiff,

v.

**HSA Residential Mortgage Services of Texas, Inc., a Delaware Corporation, AIG International Group, Inc., and Does 1 through 20, inclusive, Defendants.**

**Bankruptcy No. LA 99–37171 ES.**
**Adversary No. 02–01413 ES.**

United States Bankruptcy Court, C.D. California.

Feb. 15, 2005.

James Stang, Pachulski, Stang and Ziehl, Los Angeles, CA, for debtor.

Nancy Knupfer, Los Angeles, CA, trustee.

**MEMORANDUM DECISION ON (1) DEFENDANT HSA RESIDENTIAL MORTGAGE SERVICES OF TEXAS, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION and (2) PLAINTIFF NANCY KNUPFER, CHAPTER 7 TRUSTEE OF THE ESTATE OF LAU CAPITAL FUNDING, INC.'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

MAUREEN A. TIGHE, Bankruptcy Judge.

On July 20, 1999 Lau Capital Funding ("LCF") filed a voluntary Chapter 11 petition. Thereafter, the Chapter 11 case was converted voluntarily by the Debtor to Chapter 7 on November 2, 1999. The Chapter 7 Trustee, Nancy Knupfer ("Trustee" or "plaintiff"), initiated an adversary action against HSA Residential Mortgage Services of Texas, Inc. ("HSA", "RMST" or "defendant") on March 12, 2002 based on the following claims: breach of con-

tract, avoidance, turnover, fraud, conversion, goods sold and delivered, declaratory relief, waste, and special relief. Defendant HSA has filed a motion for summary judgment on all of the Trustee's claims, in addition to moving for summary adjudication on the Trustee's request for lost profits.

The Trustee opposes HSA's motion and has filed a cross-motion for partial summary adjudication regarding the issues of breach of contract and conversion.

These motions came on for hearing on December 2, 2004 in this Court. The Court will address each of the ten issues for which the defendant requested summary judgment and summary adjudication. Additionally, where appropriate, the Court will rule on the plaintiff's cross-motions for summary adjudication.

On December 22, 2004, the Trustee filed a motion for adverse inference due to concealment of discovery and/or spoliation of evidence and for sanctions in the courtroom of Judge Erithe A. Smith.[1] The hearing is to occur on February 17, 2005. In the Trustee's motion, she alleges that HSA has withheld, concealed, or destroyed evidence regarding the extent to which HSA did business with 18 former Lau customers and regarding HSA's intentions during negotiations. Specifically, the Trustee seeks credit committee meeting minutes, source accounting data for all of the customers with which HSA actually did business, and credit recommendations composed by Trevino on each of the 18 customers. At oral argument, the Trustee argued that the ruling on the spoliation motion affects the cross-motions for summary judgment.

---

1. This case is assigned to Judge Smith. Solely the cross-motions for summary judgment were transferred to this court.

The Court hereby issues this memorandum in support of its decision.

## BACKGROUND

Before filing its bankruptcy, LCF had been a mortgage warehouse lender, a company that loans money to mortgage companies that would, in turn, make residential mortgage loans to consumers. By providing interim financing to mortgage companies, LCF, as a lender, would receive a loan set-up fee and interest for use of its credit. HSA was also in the mortgage warehouse lending business. HSA was a wholly-owned subsidiary of AIG International Group, Inc.

After losing an important line of credit, LCF filed for Chapter 11 bankruptcy on July 20, 1999. In an effort to reorganize under its plan, LCF entered an Asset Purchase Agreement (the "Agreement") (Plaintiff's Complaint, Exhibit A) on October 1, 1999 with HSA. The parties dispute the meaning of the Agreement's contents, especially, section 3.4. Section 3.4 states the following regarding the selection of mortgage originators:

> The selection of mortgage originators by Buyer of those of Seller's Customers with whom Buyer will execute Mortgage Purchase Agreements shall be in Buyer's sole discretion. The funding of individual loans from such mortgage originators and the discontinuance of any relationship with such mortgage originators shall be in Buyer's sole discretion.

The Purchase Price, as described in section 3.1, to be paid from HSA to LCF was the amount over $20.00 that HSA received from a listed customer on each loan funded through September 30, 2009.

Defendant HSA claims that the Agreement gave HSA the right to solicit any of the 18 LCF's customers on the list, attached to the Agreement as an exhibit, all of which were residential mortgage originators. HSA alleges that the Agreement did not obligate HSA to enter into mortgage purchase contracts with any of the 18 LCF customers on the customer list (Defendant's Request for Judicial Notice, Exhibit A). Consequently, LCF would receive a loan set-up fee only if HSA actually entered into a mortgage purchase contract with one of the named LCF customers.

In contrast, LCF argues that the Agreement manifests that HSA would enter into relationships with all 18 preselected LCF customers, from which LCF would receive a loan set-up fee. According to LCF's interpretation, the "sole discretion" referenced in the first sentence of section 3.4 was the initial discretion of HSA to choose which companies to do business with out of LCF's 41 existing mortgage originator customers. After selecting customers, LCF's understanding was that HSA would enter into contractual relationships with each of the selected customers and that the only discretion HSA had was to terminate relationships with the mortgage originators for underwriting reasons.

Section 6.4 of the Agreement contains a provision that required Bankruptcy Court approval of LCF's customer list: "Seller shall, immediately upon execution of this Agreement, file a motion with the United States Bankruptcy Court, Central District of California seeking an order approving the terms of this Agreement." Nevertheless, LCF never sought Bankruptcy Court approval.

HSA admits that it entered into mortgage purchase agreements with four LCF customers and that it has not yet paid any proceeds from these mortgages to LCF. However, HSA alleges that it has kept track of the amounts owed to LCF under the Agreement and has continued to do so after conversion of the case to Chapter 7. The accrued amount is approximately

$135,000. HSA further claims that following the Chapter 7 conversion, HSA attempted to contact the Chapter 7 Trustee to discuss payment delivery, but that the Chapter 7 Trustee never returned its telephone calls. LCF disputes that HSA has properly accounted for money owed under the Agreement and also disputes that HSA ever tried to telephone the Trustee.

HSA did not enter agreements with the remaining 14 LCF customers on the list. The Trustee's position is that HSA's failure to pursue relationships with the other 14 LCF customers was a tactic to prevent HSA competitors in the mortgage warehouse financing business from obtaining these accounts. Moreover, by purchasing the customer list but failing to solidify relationships with the customers, the Trustee argues that HSA wasted LCF's most valuable asset and therefore is liable for damages to the estate either in tort or contract.

HSA went out of business in 2002.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, partial or otherwise, the court must view the evidence, as well as all justifiable inferences drawn from that evidence, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

■ "A party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On the other hand, a party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248, 106 S.Ct. 2505. The entry of summary judgment is proper when the non-moving party fails to make a showing sufficient to establish the existence of an element essential of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

If the Court finds that summary judgment is not proper, the Court may still consider granting partial summary judgment pursuant to Federal Rule of Civil Procedure 56(d). "The procedure prescribed in subdivision 56(d) is designed to be ancillary to a motion for summary judgment." 10B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2737 (West 1998). See *In re Data General Corp. Antitrust Litigation*, 490 F.Supp. 1089, 1103 (N.D.Cal.1980) ("The purpose of a Rule 56(d) order, which is analogous to a pretrial order under Rule 16, is to salvage all constructive results of summary judgment proceedings."); *Lovejoy Electronics, Inc. v. O'Berto*, 616 F.Supp. 1464 (D.C.Ill.1985) ("[Partial summary judgment's] purpose is to salvage some results from the judicial effort involved in the denial of a motion for summary judgment and to frame narrow tri-

able issues if the court finds that the order would be helpful with the progress of litigation." (Internal citations omitted)). The ultimate purpose of partial summary judgment is to narrow the issues for trial. "The [Rule 56(d)] procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Luria Steel & Trading Corp. v. Ford,* 9 F.R.D. 479, 481 (D.Neb.1949).

## BREACH OF CONTRACT

### (1ST Claim for Relief)

■ A threshold inquiry in analyzing a breach of contract claim is whether or not a valid, enforceable contract exists. Defendant HSA makes two arguments in support of its motion for summary judgment on the Trustee's breach of contract claim: (1) the contract was void and unenforceable because both a condition precedent and a condition subsequent were not met, and (2) HSA did not breach the Agreement.

The Court finds that the debtor's failure to comply with the condition precedent, bankruptcy court approval, creates a voidable contract rather than a void contract. Even if the approval of section 363(b) was not satisfied, the omission causes the sale to be voidable, but does not void the contract entirely. *Matter of Met–L–Wood Corp.,* 861 F.2d 1012, 1018 (7th Cir.1988) (asserting that a sale of property that fails to comply with notice or hearing requirements and applicable bankruptcy rules may be set aside but is not void). The Trustee cites a law review article, P. Schovanec, *The Sale of Property Under Section 363: The Validity of Sales Conducted Without Proper Notice,* 46 Okla. L.Rev. 489, that finds an emerging trend of courts balancing the equitable and economic interests of the parties affected by the sale to determine whether or not to uphold an otherwise defective sale. The Trustee's arguments, as well as this article, are persuasive that the contract should not be set aside where bankruptcy court approval was not sought. HSA benefited substantially from the contract and took possession of the customer list without waiting for court approval.

■ With respect to the condition subsequent, the Court concludes that because the debtor voluntarily converted the case to chapter 7, section 6.5 was never triggered. The terms of section 6.5 only make the Agreement null and void when "any petitioner is successful in changing the Bankruptcy Case to involuntary bankruptcy proceedings under Title 7." However, in this case, the debtor himself moved the Court for voluntary conversion of the bankruptcy case. Thus, the contract cannot be invalidated based on section 6.5.

■ In addition, the Trustee is correct that the provisions of 11 U.S.C. § 541 supercede section 6.5 of the Agreement. Section 541(c)(1) states that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— (A) that restricts or conditions transfer of such interest by the debtor; or (B) that is conditioned ... on the commencement of a case under this title ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" and the "proceeds, ... profits of or from property of the estate ...." 11 U.S.C. § 541(a)(1), (a)(6). Virtually all property interests of the debtor are property of the estate irrespective of any restriction or conditions on transfer. Furthermore, "[a]bsent court

approval, private contractual agreements may not override an express provision of the Federal Bankruptcy Code." *In re Flynn,* 143 B.R. 798, 800 (Bankr.D.R.I. 1992) (citing *Testa v. Katt,* 330 U.SA. 386 (1947)). Thus, LCF's proceeds of the contract became property of the estate regardless of section 6.5.

The Trustee's unclean hands defense is inapplicable in this case because unclean hands bars recovery in equity and here, HSA has not asked for anything in equity.

Because the condition precedent makes the contract voidable, and not void, and because the condition subsequent was never satisfied, a contract exists between HSA and LCF.

■ Having established the existence of a contract, the Court looks to the second argument that HSA did not breach the Agreement. A breach of contract claim requires that the Trustee show (1) there was a contract, (2) LCF performed, was willing to perform, or was excused from performing, (3) HSA breached the contract, and (4) LCF or the estate was damaged. *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1388, 272 Cal.Rptr. 387 (1990). In this case, whether or not HSA breached the Agreement and the extent to which HSA may have breached the Agreement depend on how the Agreement is interpreted. "Under California law, the interpretation of the contract is a question of law" for the courts to decide. *In re Bennett,* 298 F.3d 1059, 1064 (9th Cir.2002). The purpose of this rule is to allow the mutual intent of the parties to control. *Id.; In re Marriage of Simundza,* 121 Cal.App.4th 1513, 18 Cal.Rptr.3d 377 (2004). If the contract is clear and explicit, the contract will govern. *In re Bennett,* 298 F.3d at 1064; *In re Marriage of Simundza,* 121 Cal.App.4th 1513, 18 Cal.Rptr.3d 377.

■ Generally, parol evidence is not admissible to vary, alter or add to the terms of an integrated written instrument. Cal. Civ.Code. §§ 1625, 1856; *Casa Herrera, Inc. v. Beydoun,* 32 Cal.4th 336, 9 Cal.Rptr.3d 97, 83 P.3d 497 (2004). However, if the terms of the written contract are "reasonably susceptible" to an interpretation that can be explained by extrinsic evidence, that evidence will be admissible notwithstanding the general rule. *Casa Herrera,* 32 Cal.4th at 343, 9 Cal.Rptr.3d 97, 83 P.3d 497; *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644 (1968). Thus, a court must provisionally receive, without actually admitting, all credible evidence pertaining to the parties intentions to determine whether the contract language is "reasonably susceptible" to the interpretation being advocated. *Wolf v. Superior Court,* 114 Cal.App.4th 1343, 1351, 8 Cal.Rptr.3d 649 (2004). Only if the court decides that the contract language is "reasonably susceptible" to the advocated interpretation may the court actually admit the extrinsic evidence to interpret the contract. *Id.* In the event that the parties present two equally plausible interpretations, parol evidence is admissible to interpret the contract and summary judgment is improper if the evidence is contradictory because a question of fact would exist. *Id.* Unexpressed intentions or ideas, however, may not be admitted as parol evidence under California law. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.,* 962 F.2d 853, 856 (9th Cir.1992) (stating that "the true intent of a party is irrelevant if it is unexpressed"); *Morey v. Vannucci,* 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998); *Winet v. Price,* 4 Cal.App.4th 1159, 1166, 6 Cal. Rptr.2d 554 (1992).

■ The Trustee's objection to the admissibility of Harriet Welch's testimony is

sustained because she did not draft section 3.4 of the contract and based on her deposition testimony, does not possess personal knowledge regarding the meaning of section 3.4.

■ The Court has provisionally admitted the parol evidence submitted and considered it to see if the terms of the written contract are "reasonably susceptible" to the Trustee's interpretation that HSA's discretion only extended to the initial selection of customers. Even considering the parol evidence, the terms of the contract are not reasonably susceptible to the Trustee's interpretation. The contract language is clear—it says that "[t]he selection of mortgage originators by Buyer of those of Seller's Customers with whom Buyer will execute Mortgage Purchase Agreements shall be in Buyer's sole discretion." Furthermore, the contract states that "[t]he funding of individual loans from such mortgage originators and the discontinuance of any relationship with such mortgage originators shall be in Buyer's sole discretion."

The depositions of Emil Lau and Larry Trevino demonstrate that no specific side agreement existed which contradicted the explicit contract language and that no parol evidence contradicts or changes the contract. Trevino testified in the following manner:

Q: The first part of that sentence, "The selection of RMST of mortgage originators currently serviced by LCF ... with which RMST will choose to enter into relationships will be solely within RMST's discretion."

A: Uh-huh.

Q: What did you mean by that sentence alone?

A: Well, you know, there was a population of originators. We're not committed to take every one of them.

Q: Okay.

A. And based on what I see, whether you agree with me or not on my basis for making that decision to exclude or include makes no difference. It's my sole discretion.

(Trevino Depo., 122:19–123:6).

\* \* \* \* \* \*

Q: Did you have an understanding that if RMST failed to pursue arrangements with those 18—forget about whether they would do business with you or not—but if RMST for one reason or another simply did not pursue a relationship with one of them, that that was contrary to the expectations you and Emil had in entering into this agreement?

A: No.

Q: Okay. What were—what was your expectation?

A: My expectation was these were the relationships—that we were going to attempt to establish relationships. These were the originators we were going to attempt to establish relationships with.

Q: Okay. Let me ask the question one more time because there's a fine point here, and I want your answer: Did you have an understanding that if RMST didn't even attempt—after getting to this 18 didn't even attempt to enter into relationships with those 18, that that would be contrary to what you and Emil had discussed?

A: No.

Q: Why not?

A: Because I didn't.

Q: Okay.

A: That was not my understanding.

Q: What did you understand?

A: I understood that Emil said, "I need to give you these relationships or

give you the opportunity to take on these relationships in consideration of some fee."

Q: You didn't see that as an obligation on RMST at least to try to enter into those relationships after having gone through everything that you went through?

A: No.

(Trevino Depo., 180:14–181:21).

\* \* \* \* \* \*

Q: But he had no expectations that you were going to try your best to create the relationships contemplated?

. . .

A: . . . I know on day one my intent was, we will do our best to establish relationships with these people. You know, it's not my intent to say, "Well, now that I have this, maybe I will, maybe I won't."

No. "We will—it will be our best effort, but there are a lot of variables here."

Even though I'm saying, "I like what I see," there's still a lot of variables that are going to enter into this final decision that may have some of those originators fall off the short list.

(Trevino Depo., 182:2, 183:23–184:8).

Trevino's deposition manifests intentions of the parties that distinctly align with the plain language of the Agreement. The language of section 3.4 states that HSA has "sole discretion" to decide with which, if any, of the 18 customers to do business. Even though Lau disagrees as to the correct interpretation of the Agreement, Lau could not point to any evidence outside the Agreement to corroborate his position:

Q: Is there anything outside this agreement that supports the testimony you just gave, namely that RMST couldn't simply put these 18 customers on the shelf, to use your expression?

A: Not that I recall at the moment.

(Lau Depo., 175:8–12).

While Lau testifies extensively about *his* understanding of the agreement and what his intent was, he never provides any basis to believe his understanding of the terms was the same as Trevino's. He does not appear to have communicated his understanding to Trevino or any other representative of HSA. On this basis, the terms of the contract must control the Court's interpretation.

Having considered all of the submitted Trevino and Lau depositions, as well as admissible parol evidence, the only conclusion that can be drawn by the Court is that Lau and Trevino did this deal very quickly and that Trevino conducted extensive due diligence in a short period of time. It was clear to both parties that HSA was very concerned about the quality of the originators it was accepting, and section 3.4 was drafted the way it was to allow the deal to go forward while still protecting HSA.

Clearly, at the time the parties entered into the contract, the goal for both Lau and Trevino was for HSA to take on as much of the business as possible from LCF as long as it met HSA's criteria. Although Trevino intended to pursue relationships with each of the 18 customers on the list, no oral agreement with Lau required him to do so, and the duties HSA had were explicitly detailed in the contract. Furthermore, no one testified and no document supports the proposition that Lau and Trevino explicitly agreed with each other that HSA would be required to enter into a relationship with the 18 customers it had selected after its due diligence. While Lau testified that he understood HSA would go forward with all 18 customers and believed they were required to do so, he provides no evidence at all that he and Trevino actually agreed that this was the

case. Uncommunicated intentions or words are not admissible as evidence in court. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.,* 962 F.2d 853, 856 (9th Cir.1992); *Morey v. Vannucci,* 64 Cal. App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998); *Winet v. Price,* 4 Cal.App.4th 1159, 1166, 6 Cal.Rptr.2d 554 (1992).

Trevino and Lau's good intentions are one thing, but what they communicated to each other is another. The deal between HSA and LCF was an asset purchase and the asset purchased was the customer list: "Buyer shall purchase from Seller, and Seller shall sell, transfer, assign and deliver to Buyer, subject to the terms and conditions of [the] Agreement, all of the Seller's right, title and interest in, to and under its customer lists ('Seller's Customers') and its customer relationships for those customers listed on the attached Exhibit A" (Complaint, Exhibit A). At no time was HSA under any obligation to do more than purchase LCF's customer list to use at its own discretion. The contract clearly states that HSA has the sole discretion to select among Seller's customers to determine with which of the 18 it wished to do business. Therefore, HSA did not breach the Agreement in failing to enter relationships with all 18 customers.

*Good Faith and Fair Dealing*

■ The Trustee maintains that HSA's interpretation of the Agreement would defy California's implied covenant of good faith and fair dealing for every contract, which requires that "neither party will do anything that [will] injure the right of the other to receive the benefits of the agreement." *Agosta v. Astor,* 120 Cal.App.4th 596, 15 Cal.Rptr.3d 565, 572–73 (2004). The Trustee cites *Third Story Music, Inc. v. Waits,* 41 Cal.App.4th 798, 48 Cal. Rptr.2d 747 (1995), for the proposition that the implied covenant of good faith and fair dealing is applicable to an agreement to

limit a party's unfettered discretion when no other or additional consideration has been paid. Because LCF was only to be paid if HSA entered contracts with LCF's customers and actually funded loans through the customer and because HSA's interpretation of the Agreement gives HSA complete discretion to fund or not fund loans through LCF's customers without having to pay independent consideration, the Trustee claims that California law requires that the implied covenant of good faith and fair dealing apply to the Agreement. The argument is that by taking possession of LCF's customer list, but failing to pursue relationships with 14 of the 18 customers on the list, HSA did not maximize the value of the asset as LCF intended when it conveyed the property to HSA.

■ The Trustee's good faith argument ignores the import of *Third Story Music* and *PMC., Inc. v. Porthole Yachts, Ltd.,* 65 Cal.App.4th 882, 76 Cal.Rptr.2d 832 (1998). *Third Story* clarifies that the explicit reservation of a discretionary power in a contract cannot be contradicted by the implied covenant of good faith and fair dealing. *Third Story,* at 41 Cal.App.4th at 809, 48 Cal.Rptr.2d 747. "Courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Id.*

Here, the contract itself provides for limits to HSA's unfettered discretion. Paragraph 3.1 requires HSA to "act in good faith in funding loans presented by Customers" and prohibits HSA from entering into side agreements to evade payments to Lau. The purpose of the contract itself was not frustrated. Although Lau was no longer able to service these cus-

tomers, LCF received the benefit of the bargain in retaining the possibility of still profiting from their former customers through HSA's work.

The contract also provides consideration for Lau Capital. HSA promises to pay Lau the excess of $20 of any loan set-up fee. Trevino and his HSA team also conducted extensive due diligence at both Lau Capital's office and the offices of at least 10 of the 18 customers on the list. Under *PMC, Inc.*, that detriment to HSA is sufficient consideration. Thus, the discretionary right in the contract should not be overridden by any implied covenant of good faith.

■ After reading and considering the Trustee's motion for adverse inference and/or spoliation, the Court has concluded that the Trustee has failed to allege sufficient facts in that motion that could alter the Court's decision on the breach of contract claim. Even assuming that the Trustee is successful on her motion before Judge Smith, the breach of contract ruling would not change. The evidence the Trustee accuses HSA of concealing is not admissible parol evidence. Credit committee meeting minutes and credit recommendations compiled by Trevino would not reveal a conveyed understanding between HSA and LCF. Meeting minutes and credit recommendations are internal documents that are not necessarily conveyed to outside parties. Without evidence that the thoughts or intentions manifested in the meeting minutes and credit recommendations were actually expressed by HSA to LCF, the Court cannot interpret those documents as accurately reflecting the intentions of the parties. Likewise, the alleged concealment of source accounting data does not affect the breach of contract issue. Obtaining missing source accounting data may be pertinent to the issue of how much damages the Court should

award, but does not affect the Court's ruling on the breach of contract claim. Therefore, the only reliable evidence of the parties' intent remains the Agreement itself. Accordingly, HSA retained the discretion to decide, even after the contract was signed, whether or not to formally enter into relationships with the 18 customers.

The Court notes, however, that the clear language of the contract does nothing to alter the fact that HSA still owes the Trustee whatever fees it derived from those mortgage lending relationships into which it did enter.

The defendant's motion for summary judgment on the contract claim is therefore denied on the argument that it is void, but granted on the basis that HSA did not breach the contract. Consequently, the plaintiff's motion for summary judgment on this issue is denied.

## AVOIDANCE

### (2nd Claim for Relief)

■ Under an avoidance action, 11 U.S.C. § 549(a), the Trustee can "avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." Defendant HSA's argument for summary judgment on the Trustee's avoidance claim relies on the expiration of section 549's statute of limitations. Section 549(d) states that an avoidance claim is not valid if it is commenced later than two years after the date of the transfer to be avoided or after the time the case is closed or dismissed, whichever is earlier. 11 U.S.C. § 549(d). In special circumstances of excusable ignorance or if the defendant's wrongful conduct prevents a timely filing, the statute of limitations

may be equitably tolled. *In re Olsen*, 36 F.3d 71, 73 (9th Cir.1994). The Trustee has the burden of proving reasonable diligence. *In re Lyons*, 130 B.R. 272, 280 (Bankr.N.D.Ill.1991). "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

■ The transfer sought to be avoided, the selling of the customer list, occurred on October 1, 1999. The complaint in this case, alleging avoidance among other claims, was filed on March 12, 2002—over two years after the Agreement occurred. Thus, the Trustee's avoidance claim is barred by section 549(d). Because the 2-year statute of limitations period has clearly passed, the only issue on summary judgment is whether the limitations period should be equitably tolled.

■ The Trustee only discovered the Agreement in late 2001. As reasons to toll the statute of limitations, the Trustee argues that the Agreement was not mentioned during the 341(a) meeting, and that there had never been any payments made under the Agreement to put the Trustee on notice of the relationship between HSA and LCF. Furthermore, although the Trustee had the records of the estate to review, the Trustee says that the fact that there were about 400 boxes of documents prevented her from discovering the Agreement within the two year state of limitations. The Trustee also disputes the fact that HSA has ever contacted the Trustee. By failing to contact the Trustee when HSA had gained possession of the customer list, the estates most valuable asset, the Trustee asserts that HSA affirmatively defrauded the bankruptcy proceedings and the Trustee. Based on these grounds, the Trustee contends that her avoidance claim should be deemed timely.

The Trustee has provided no evidence that HSA affirmatively hid the claim. The Trustee argues that her avoidance claim should be allowed because Defendant deceived the Trustee and the bankruptcy proceedings by failing to disclose its acquisition of the customer list. However, the only fact the Trustee alleges is that HSA never contacted the Trustee and simply kept LCF's customer list. Even resolving all disputed facts in favor of the Trustee and drawing all inferences in her favor, these are insufficient facts to demonstrate that HSA covered up this transfer from the Trustee. The Trustee would have the burden of proof at trial on the equitable tolling issue, and these facts do not show that the wrongful conduct of the defendant caused the delay.

■ Neither has the Trustee stated sufficient facts to show excusable neglect in failing to discover the Agreement and to file her claim within the statute of limitations. The undisputed evidence is that the Trustee had multiple opportunities to discover her claim. The parties were arguing over the value of the Asset Purchase Agreement as part of the creditor's motion to appoint a trustee (See Exhibit B, p. 5 and Exhibit C, p. 17 to Defendant's Request for Judicial Notice), and thus, the Trustee had notice of HSA and LCF's relationship. (See Docket No. 78, Reply to Objection filed by Banc One Capital Partners, p. 2). The Trustee had sufficient time, through conducting the 341(a) meeting, reviewing the court docket, and hiring a field representative to uncover this contract. Failing to discover the Agreement under these circumstances does not rise to the level of excusable neglect contemplated by the special circumstances required to waive a statute of limitations. Therefore, the Trustee's avoidance claim must fail because the statute of limitations has expired and the Trustee has not met her

burden of proof to justify equitably tolling the limitations period.

Regardless of the outcome on the Trustee's motion for adverse inference and/or spoliation, the statute of limitations period has passed and should not be equitably tolled. None of the evidence sought by the Trustee in the adverse inference and/or spoliation motion is alleged to show that HSA did anything to prevent the discovery and filing of the Trustee's claims against HSA. Evidence that could be obtained from the credit committee meeting minutes is most pertinent to the issue of whether or not HSA attempted to enter into relationships with all 18 preselected customers. Yet, even so, as discussed in the breach of contract section, credit committee meeting minutes would not reflect communicated ideas. Furthermore, credit committee meeting minutes, source accounting data, and credit recommendations, even if proven to have been concealed from the Trustee, do not warrant tolling the statute of limitations because the Trustee sought these documents *after* their claim had already been discovered. Only if the defendant's wrongful conduct actually prevented the plaintiff from timely filing a claim will the statute of limitations be tolled. While these documents might be relevant to proving damages, they fail to justify equitable tolling.

The Defendant's motion for summary judgment on the Trustee's claim for avoidance is granted.

### TURNOVER

#### (3rd Claim for Relief)

 In the turnover claim, the Trustee seeks the return of the customer list as well as payment of the debt owed to LCF under the Agreement. "[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542. HSA's first argument for summary judgment on the Trustee's turnover claim is that the claim is time-barred. Section 542 has the same two-year statute of limitations as the § 549 avoidance claim. *Smith v. Mark Twain National Bank,* 805 F.2d 278, 292 (8th Cir.1986).

For the same reasons regarding the second claim for relief based on avoidance, the Trustee's turnover claim is time-barred because it was brought outside the allowable statute of limitations. Defendant HSA did not hide evidence of the Agreement, and the Trustee had an adequate opportunity to discover the Agreement. Furthermore, similar to the Court's determination on the avoidance claim, and based on identical grounds, the statute of limitations will not be tolled by the forthcoming judgment on the Trustee's motion for adverse inference and/or spoliation.

Defendant's motion for summary judgment on the Trustee's turnover claim is granted.

### FRAUD

#### (4th Claim for Relief)

 In a claim for fraud, the plaintiff must prove the following:

(1) Defendant made representations;

(2) At the time of making the representations, defendant knew they were false;

(3) Defendant made representations with the intent and purpose of deceiving the plaintiff;

(4) The plaintiff justifiably relied on the defendant's representations; and

(5) The plaintiff sustained a loss and damage as a proximate cause of the defendant's representations.

*See Molko v. Holy Spirit Assn.,* 46 Cal.3d 1092, 1108, 252 Cal.Rptr. 122, 762 P.2d 46 (1988); *Prosser & Keeton on Torts* § 105, at 728 (5th ed.1984).

 The Court's ruling on the breach of contract claim disposes of the Trustee's arguments that the Agreement, and also California law of implied good faith and fair dealing, required HSA to enter relationships with all 18 customers after selecting from the larger group of 41 LCF customers. Because the language of the contract indicates that HSA had sole discretion and was under no obligation to fund all or any of the 18 LCF customers, HSA did not make any false representation in section 3.4 of the Agreement. Furthermore, LCF has no basis to claim justifiable reliance on a representation that HSA would enter into and continue funding loans to all 18 customers until September 2009.

To the extent that the Trustee argues that Trevino's representation that he intended to pursue the 18 customer relationships was fraudulent, the provisions of the contract itself make this theory untenable. As Judge Carter noted in *Baymiller v. Guarantee Mutual Life Co.,* 2000 WL 33774562 (C.D.Cal.2000), "there cannot be reasonable reliance upon misrepresentations or a failure to disclose that are contradicted by the express language of the ... contract." While Lau may have relied on the intention expressed by Trevino to pursue the relationships, that reliance was not justified in light of the contractual provisions giving HSA such broad discretion.

 Although the fraud claim may not proceed based on the theory that the representations in section 3.4 of the contract were fraudulent, the Trustee argues in her adverse inference and/or spoliation motion that HSA concocted the deal with LCF with the intention of eliminating LCF as a

competitor and frustrating LCF's reorganization effort. She argues that this is a possibility in light of the fact that HSA failed to enter relationships with 14 of the 18 customers on the preselected list and has thus far failed to return the asset. Additionally, the Trustee notes that HSA has not produced its minutes and other documents pertaining to its decision whether or not to create the 18 relationships, even though document requests have been made and Mr. Trevino testified that he recommended relationships with all 18 customers to the credit committee.

Because all reasonable inferences must be drawn in favor of the Trustee in this motion, the one theory that the Trustee may pursue is the allegation in the fourth claim for relief that defendant's actions in pursuing the agreement was in itself fraudulent because it was a secret plan to eliminate a competitor. There are sufficient disputed facts and inferences that this allegation must be left for the trier of fact, at least until the Trustee's spoliation motion is decided.

Because the Trustee has raised sufficient facts to raise the question, the motion for summary judgment on the Trustee's fraud claim is denied without prejudice, to renew at a later date.

## CONVERSION

### (5th Claim for Relief)

 "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Farmers Insurance Exchange v. Zerin,* 53 Cal.App.4th 445, 451, 61 Cal.Rptr.2d 707 (1997) (internal citations omitted). "Money cannot be

the subject of conversion unless a *specific, identifiable sum* is involved." 5 Witkin, *Summary of California Law, Torts,* § 614 (9th ed.2004); see also *Zerin,* 53 Cal. App.4th at 452, 61 Cal.Rptr.2d 707. "A mere claim of ownership or a statement of intention to interfere with the property under an asserted right will not of itself amount to a conversion." 5 Witkin, *Summary of California Law, Torts,* § 615 (9th ed.2004).

On December 2, 2004 when the Court heard oral arguments on the parties' cross-motions for summary judgment, the Court requested supplemental briefing on the issue of the "election of remedies" doctrine. "The doctrine of election of remedies acts as a bar precluding a plaintiff from seeking an inconsistent remedy as the result of his previous conduct or election." *Roam v. Koop,* 41 Cal.App.3d 1035, 1039, 116 Cal.Rptr. 539 (1974); see *Haphey v. Linn County,* 924 F.2d 1512 (9th Cir.1991).

In this case, the Court finds that the "election of remedies" doctrine is inapplicable. Although the Trustee's request for recovery on both its breach of contract and conversion claims is certainly inconsistent, LCF has not taken action in a way that demonstrates it has chosen one remedy over the other. Here, plaintiff has requested summary judgment on both its breach of contract and conversion claims, a contract and tort claim respectively, but has not taken any action outside this motion. There has been no previous conduct or election and thus, the election of remedies doctrine would not apply to preclude the Trustee from pursuing either her breach of contract or conversion claim.

Nonetheless, the Court recognizes that "inconsistent verdicts are 'against the law.'" *Shaw v. Hughes Aircraft Co.,* 83 Cal.App.4th 1336, 1344, 100 Cal.Rptr.2d 446 (2000) (citing *Morris v. McCauley's Quality Transmission Service,* 60 Cal.App.3d 964, 970, 132 Cal.Rptr. 37 (1976)). The Court, having already determined that a contract existed between HSA and LCF, finds that the plaintiff's conversion claim must necessarily fail. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Farmers Insurance Exchange v. Zerin,* 53 Cal.App.4th 445, 451, 61 Cal. Rptr.2d 707 (1997) (internal citations omitted). A transfer that is voluntary is not wrongful because a voluntary transfer is consensual and thus, is not wrongful. Through the Agreement, "LAU agreed to sell, and HSA agreed to purchase, LAU's customer lists and relationships" (Complaint, ¶ 17). "[A] mere contractual right to payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion." *In re Bailey,* 197 F.3d 997, 1000 (9th Cir.1999); *In re Cruz,* 198 B.R. 330, 333 (S.D.Cal.1996); *Klett v. Security Acceptance Co.,* 38 Cal.2d 770, 789, 242 P.2d 873 (1952).

In this case, defendant HSA received possession of the customer list lawfully, and the only obligation that remains outstanding is payment according to the contract. HSA has not yet paid LCF for the four customers to which it extended loans because of the disagreement between HSA and LCF as to how much HSA owes. Conversion, however, is not the appropriate claim to collect on the outstanding amount due to LCF, as HSA's possession of the customer list was not wrongful.

The defendant's motion for summary judgment on the conversion claim is grant-

ed. It follows that the plaintiff's motion for summary judgment on the same issue is denied.

## GOODS SOLD AND DELIVERED; DECLARATORY RELIEF; WASTE; AND SPECIAL RELIEF (6th—9th Claims for Relief)

■ On each of these claims, HSA argues that summary judgment is warranted because each claim is based on an erroneous reading of the Agreement that HSA was obligated to fund a specific number of loans to all 18 customers until September 2009.

HSA, as the moving party needs to demonstrate that no material issues of fact remain on each element of each claim. Although the Court's finding for HSA on the contract claim may in fact undermine the Trustee's recovery on claims six through nine, it is not clear to the Court from HSA's moving papers that this is the case. HSA has failed to meet its burden.

While the Trustee's arguments regarding damages based on her interpretation of section 3.4 of the contract must fail, any damages arising out of a more limited reading of the contract are still at issue. The factual issues concerning what HSA actually derived from this contract appear to be in dispute, thus precluding summary judgment on these claims, at this time.

The defendant's motion for summary judgment on claims six through nine are denied without prejudice.

## SUMMARY ADJUDICATION ON TRUSTEE'S REQUEST FOR LOST PROFITS

■ With respect to each of the nine claims in the Trustee's complaint, the Trustee seeks lost profits. Defendant HSA requests summary adjudication in its favor because it alleges that there is no "substantial controversy" regarding the

fact that the Trustee cannot establish her claim to lost profits. The Court does find that the Agreement did not require HSA to fund a minimum number of loans for any particular amount of time to all 18 LCF customers until September 2009. Much of the Trustee's damages evidence will need to be revised in light of this finding, but it is not clear at this stage that they are completely eliminated.

HSA also argues that the Trustee may not recover lost profits because the profit calculation would be too speculative. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Cal. Civ.Code 3301; *Continental Car–Na–Var Corp. v. Moseley,* 24 Cal.2d 104, 113, 148 P.2d 9 (1944); *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 62, 221 Cal.Rptr. 171 (1985); *Vestar Development II, LLC v. General Dynamics Corp.,* 249 F.3d 958, 961–62 (9th Cir.2001).

■ While the Trustee's claims for lost profits damages are, in part, speculative, "[w]here the *fact* of damages is certain, ... the amount of damages need not be calculated with absolute certainty .... The law requires only that some reasonable basis of computation be used, and the result reached can be a reasonable approximation." *Acree v. General Motors Acceptance Corporation,* 92 Cal.App.4th 385, 398, 112 Cal.Rptr.2d 99 (2001). Summary judgment should not be granted on this issue because the fact-finder should determine the reasonableness of the expert opinions submitted. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.,* 47 Cal.App.4th 464, 489–90, 54 Cal.Rptr.2d 888 (1996). The Trustee has raised sufficient issues of material fact that summary judgment on this issue is premature.

Summary judgment on the profits issue is denied without prejudice, to renew once the spoliation motion and any further prof-

its or damages analysis is done in light of the Court's findings on other issues.

## CONCLUSION

For the foregoing reasons, the Court rules on the parties' motions for summary judgment and summary adjudication in the following manner:

*Claim 1:* HSA's motion for summary judgment on the Trustee's breach of contract claim is granted in part and denied in part. The Trustee's motion for summary judgment on this issue is denied.

*Claim 2:* HSA's motion for summary judgment on the Trustee's avoidance claim is granted.

*Claim 3:* HSA's motion for summary judgment on the Trustee's turnover claim is granted.

*Claim 4:* HSA's motion for summary judgment on the Trustee's fraud claim is denied without prejudice.

*Claim 5:* HSA's motion for summary judgment on the Trustee's conversion claim is granted. The Trustee's motion for summary judgment on this issue is therefore denied.

*Claim 6:* HSA's motion for summary judgment on the Trustee's goods sold and delivered claim is denied without prejudice.

*Claim 7:* HSA's motion for summary judgment on the Trustee's declaratory relief claim is denied without prejudice.

*Claim 8:* HSA's motion for summary judgment on the Trustee's waste claim is denied without prejudice.

*Claim 9:* HSA's motion for summary judgment on the Trustee's special relief claim is denied without prejudice.

*Lost Profits:* HSA's motion for summary adjudication on the Trustee's claim for lost profits is denied without prejudice.

An appropriate order will issue.