*450
 
 Opinion
 

 PUGLIA, P. J.
 

 Plaintiff, Farmers Insurance Exchange (Farmers), appeals from a judgment of dismissal entered after the trial court sustained general demurrers to the complaint, in part with leave to amend, and Farmers declined to amend. Farmers contends the complaint adequately states causes of action for conversion, breach of constructive trust, declaration of a lien, negligent and intentional interference with contract, money had and received, and a general declaration of rights. We shall affirm.
 

 I
 

 For purposes of appeal, we accept as true the facts as alleged in the complaint.
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Farmers issued separate policies of automobile insurance to Joseph Stewart and Linda Kendrick, which provide for the payment of medical benefits in the event of an accident in which the insured or another covered person is injured. On or about August 13, 1991, Stewart was involved in an accident in which he and Jimmy Stinnett were injured. Stewart and Stinnett submitted a claim for medical benefits under Stewart’s insurance policy and Farmers paid the sum of $10,000. On or about July 25, 1992, Kendrick was involved in an automobile accident in which Jennifer Silva was injured. Silva submitted a claim for medical benefits under Kendrick’s insurance policy and Farmers paid the sum of $2,000.
 

 The policies issued to Stewart and Kendrick both contain the following provision: “When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment. . . ,”
 
 [1]
 

 Stewart, Stinnett, and Silva (the insureds) hired defendant, Jonathan J. Zerin, an attorney, to represent them in connection with their claims against third party tortfeasors allegedly responsible for their injuries. Farmers notified defendant of the policy provisions requiring reimbursement upon recovery from third parties. Defendant thereafter received payments from third party tortfeasors on behalf of the insureds but failed to pay any portion to Farmers, disbursing the funds instead to himself and others.
 

 Farmers initiated this action against defendant alleging seven causes of action regarding the payments received on behalf of Stewart and Stinnett: (1)
 
 *451
 
 conversion; (2) breach of constructive trust; (3) declaration of an equitable lien; (4) intentional interference with contract; (5) negligent interference with contract; (6) money had and received; and (7) declaratory relief. Essentially identical causes of action, the eighth through the fourteenth, are alleged as to payments received on behalf of Silva.
 

 Defendant interposed general demurrers, arguing none of the causes of action state a claim for relief because the policy language does not create a lien on third party recoveries or a trust relationship between Farmers and defendant. Defendant further argued the complaint does not allege adequate notice of Farmers’ claim or demand for payment. Finally, defendant argued the allegations of the complaint establish defendant is not in possession of the alleged trust res.
 

 The trial court sustained the demurrers without leave to amend as to the third and tenth causes of action (declaration of an equitable lien) and with leave to amend as to the remaining causes of action. Farmers declined to amend and defendant moved to dismiss. The trial court granted defendant’s motion.
 

 II
 

 “In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. ‘We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.’ . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.”
 
 (Blank
 
 v.
 
 Kirwan, supra,
 
 39 Cal.3d at p. 318, citations omitted.)
 

 Farmers contends the first and eighth causes of action state claims for conversion. Therein, Farmers alleges it had property rights in any third party recoveries by virtue of the insurance policy language, defendant had notice of Farmers’s rights, defendant received payments from third parties on behalf of the insureds, and defendant failed to pay any portion to Farmers.
 

 “Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff’s ownership or right to possession of the property at the time of the conversion; the defendant’s conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to
 
 *452
 
 his own use. [Citations.]”
 
 (Oakdale Village Group
 
 v.
 
 Fong
 
 (1996) 43 Cal.App.4th 539, 543-544 [50 Cal.Rptr.2d 810].) Money can be the subject of an action for conversion if a specific sum capable of identification is involved.
 
 (Weiss
 
 v.
 
 Marcus
 
 (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297].)
 

 Neither legal title nor absolute ownership of the property is necessary.
 
 (Messerall
 
 v.
 
 Fulwider
 
 (1988) 199 Cal.App.3d 1324, 1329 [245 Cal.Rptr. 548].) A party need only allege it is
 
 “entitled to immediate possession at the time of conversion.
 
 [Citations.]”
 
 (Bastanchury
 
 v.
 
 Times-Mirror Co.
 
 (1945) 68 Cal.App.2d 217, 236 [156 P.2d 488], italics in original.) However, a mere contractual right of payment, without more, will not suffice. For example, in
 
 Imperial Valley L. Co.
 
 v.
 
 Globe G. & M. Co.
 
 (1921) 187 Cal. 352 [202 P. 129], the tenant entered into an agreement to raise crops on leased land and to pay the landlord one-fourth of the crop as rental. However, the tenant sold the entire crop and the proceeds were used to pay other debts of the tenant. The landlord brought an action for conversion. The Supreme Court concluded no claim was stated because the rental agreement established no title to or lien upon the crop but only established the measure of damages for breach of contract.
 
 (Id.
 
 at pp. 353-354.)
 

 Farmers contends it had a sufficient property interest in the third party recoveries by virtue of the policy language which, it argues, created an actual or equitable lien on the funds. “One who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion.”
 
 (Messerall
 
 v.
 
 Fulwider, supra,
 
 199 Cal.App.3d at p. 1329.)
 

 In
 
 Weiss
 
 v.
 
 Marcus, supra,
 
 51 Cal.App.3d 590, Weiss, an attorney, contracted with Oram to prosecute Oram’s claim against Novick. Weiss was given an express lien on all amounts recovered to secure payment of his fees. However, before completion of the action, Marcus replaced Weiss as counsel for Oram. Up to then, Weiss had performed services with a reasonable value of $6,750. Eventually, a settlement was negotiated whereby Oram was to receive $35,000. Despite knowledge of Weiss’s lien rights, Marcus disbursed the entire amount to himself and Oram. Weiss sued both Oram and Marcus. The Court of Appeal concluded Weiss stated a claim for conversion against Marcus by virtue of Marcus’s receipt of and exercise of dominion over that portion of the settlement proceeds covered by Weiss’s lien.
 
 (Id.
 
 at p. 599.)
 

 In
 
 McCafferty
 
 v.
 
 Gilbank
 
 (1967) 249 Cal.App.2d 569 [57 Cal.Rptr. 695], McCafferty had obtained an Ohio judgment against her former husband for
 
 *453
 
 unpaid support. Gilbank represented the former husband in a personal injury action in California and negotiated an agreement between McCafferty and his client whereby McCafferty would be paid one-half of any recovery in the personal injury action. However, when the personal injury action settled and checks were issued in payment, Gilbank paid the net proceeds to his client.
 

 The Court of Appeal concluded the agreement between McCafferty and her former husband created an equitable lien in favor of McCafferty on the third party recovery and Gilbank’s payment of the proceeds to his client was an act of conversion.
 
 (McCafferty
 
 v.
 
 Gilbank, supra,
 
 249 Cal.App.2d at pp. 575-576.) The court explained: “ ‘ “[W]here a third party has paramount title to the money in the hands of the agent, and notifies the latter of his claim, if the agent nevertheless pays the principal, he is liable to the true owner.” ’ ”
 
 (Id.
 
 at p. 577, quoting from
 
 Tillman
 
 v.
 
 Bungenstock
 
 (1914) 185 Mo.App. 66 [171 S.W. 938, 939]; accord,
 
 Kaiser Foundation Health Plan, Inc.
 
 v.
 
 Aguiluz
 
 (1996) 47 Cal.App.4th 302, 303 [54 Cal.Rptr.2d 665] [existence of an equitable lien conceded; attorney who is on notice of client’s contractual obligation to indemnify health care provider from the proceeds of a settlement or judgment is liable to health care provider if he disburses such funds to client]; but see
 
 United States
 
 v.
 
 Limbs
 
 (D.Ariz. 1973) 356 F.Supp. 1004, affd. in part, 524 F.2d 799 [31 A.L.R. Fed 341] [federal employees who were paid medical benefits by government obtained a third party settlement; employees’ attorney receiving settlement proceeds was not required to reimburse the government because the government’s claim to the funds was disputed].)
 

 Farmers contends the language of the insurance policies, incorporated in the complaint by reference, creats an equitable lien in favor of Farmers upon third party recoveries.
 

 An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property. (42 Cal.Jur.3d, Liens, § 10, p. 621.) It may arise from a contract which reveals an intent to charge particular property with a debt or “out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.” (1 Jones, The Law of Liens (3d ed. 1914) § 27, pp. 24-25.) “The basis of equitable liens is variously placed on the doctrines of estoppel, or unjust enrichment, or on the principle that a person having obtained an estate of another ought not in conscience to keep it as between them; and frequently it is based on the equitable maxim that equity will deem as done that which ought to be done, or that he who seeks the aid of equity must himself do equity.” (53 C.J.S., Liens, § 5, pp. 462-463, fns. omitted.)
 

 
 *454
 
 It has been judicially observed that equitable liens arising by contract are as various as the contracts parties may make, and the question whether a lien has been created under particular circumstances depends upon the facts of the case. (53 C.J.S., Liens, § 5, at pp. 463-464.) For example, where a lessor contracted to purchase insurance on behalf of both the lessor and the lessee but purchased protection for itself only, and a loss ensued for which the lessor was reimbursed, the lessee is entitled to an equitable lien on the insurance proceeds. (See
 
 Gordon
 
 v.
 
 J. C. Penney Co.
 
 (1970) 7 Cal.App.3d 280, 285 [86 Cal.Rptr. 604].)
 

 Defendant contends an equitable lien should not be recognized here because to do so would defeat the express language of the insurance policy. Defendant relies on Civil Code section 2872, which reads: “A lien is a charge imposed in some mode
 
 other than by a transfer in trust
 
 upon specific property by which it is made security for the performance of an act.” (Italics added.) Defendant contends the policy language creates a trust rather than a lien. However, the question here is not whether the policy can be interpreted as creating an
 
 express
 
 lien. The question is whether the policy language, which admittedly does not create an express lien, can nevertheless be read to create an equitable lien.
 

 A promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund. (42 Cal.Jur.3d,
 
 op. cit. supra,
 
 § 12, at p. 626.) In
 
 Morrison
 
 v.
 
 Havens
 
 (1938) 24 Cal.App.2d 504 [75 P.2d 515], the plaintiff’s assignor performed construction work on property owned by the defendant’s father, who promised to pay for it out of proceeds from the sale of the property. The Court of Appeal found no equitable lien had been created. “The instrument in question manifests no intention to create a lien upon the real property. It appears to be an informal memorandum executed for the purpose of evidencing the personal obligation of the maker. ... At most, it was a mere agreement to pay a debt out of a particular fund, when received, but such an agreement does not create a lien even upon such fund. [Citations.]”
 
 (Id.
 
 at pp. 505-506.)
 

 This case involves both more and less than a bare promise to reimburse Farmers from a particular fund. It involves more because the parties who contracted with Farmers, Stewart and Kendrick, promised to hold “in trust” for Farmers any third party recovery. It involves less because the other insureds, Stinnitt and Silva, promised Farmers nothing. They were not parties to the insurance contract. It also involves less because Farmers is not attempting to enforce an equitable lien against the insureds but against their legal representative, who likewise promised Farmers nothing.
 

 A promise to hold property in trust for another, standing alone, will not create an equitable interest in that property. An express trust is “a
 
 *455
 
 fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.” (Rest.2d Trusts, § 2.) A trust is a personal relationship between the trustee and the beneficiary. (1 Scott, The Law of Trusts (4th ed. 1987) § 2.4, p. 42.) It does not create an interest in the trust res per se. As a leading treatise explains: “A promise that certain goods shall be held in trust for the benefit of another, and that the proceeds shall be paid to him, does not amount to an equitable assignment of the goods or specific lien upon them; for in such case the owner retains control of the goods, and may appropriate them or their proceeds to the payment of other creditors, and the holder of such promise cannot follow the goods any more than he could follow their proceeds.” (1 Jones, The Law of Liens,
 
 op. cit. supra,
 
 § 51, at p. 51.)
 

 However, even a mere promise to pay from a specific fund may suffice to create an equitable lien if considerations of detrimental reliance or unjust enrichment are implicated. For example, where labor and material suppliers enhance the value of property, justifiably relying upon assurances they will be paid from a construction loan fund, an equitable lien on such fund will be recognized. (See
 
 Smith
 
 v.
 
 Anglo-California Trust Co.
 
 (1928) 205 Cal. 496, 501-504 [271 P. 898].) As explained in
 
 McBain
 
 v.
 
 Santa Clara Sav. & Loan Assn.
 
 (1966) 241 Cal.App.2d 829, 836 [51 Cal.Rptr. 78]: “The rationale of the rule permitting recovery on a theory of equitable lien is essentially this: that it would be inequitable and unjust to withhold from those persons who have by their labor and materials enhanced the value of the property the loan fund [sic] which constituted a material inducement to them in supplying such labor and materials and upon which they relied for reimbursement. . . . ‘Where the lender has received the benefit of the claimant’s performance, and therefore a more valuable security for its note, it is not justified in withholding or appropriating to any other use money originally intended to be used to pay for such performance and relied upon by the claimant in rendering its performance.’ ” (Citations omitted.)
 

 In
 
 Dodd
 
 v.
 
 Cantwell
 
 (1960) 179 Cal.App.2d 727 [4 Cal.Rptr. 113], two ranch hands were induced to work for many years on a ranch on the promise they would be paid from the proceeds of sale of the property. The court upheld an equitable lien on the ranch for the value of the services rendered.
 
 (Id.
 
 at pp. 733-735.)
 

 In
 
 Stockwell
 
 v.
 
 Mutual Life Ins. Co.
 
 (1903) 140 Cal. 198 [73 P. 833], the mother obtained a life insurance policy covering the father, naming as beneficiary herself and after her death their children. After the mother’s
 
 *456
 
 death, one of the children continued the premium payments in order to avoid lapse of the policy. Upon the father’s death, the court held the paying child was entitled to a lien on the insurance proceeds for the amount of premiums paid.
 
 (Id.
 
 at pp. 202-204.)
 

 In
 
 McCafferty
 
 v.
 
 Gilbank, supra,
 
 249 Cal.App.2d 569, the plaintiff had been promised payment from the proceeds of her husband’s personal injury action. On the strength of this promise, the plaintiff failed to file a judgment lien in that action. The Court of Appeal concluded the plaintiff had an equitable lien on the litigation recovery enforceable against the husband’s attorney.
 

 Unlike the foregoing decisions, the present matter does not involve considerations of detrimental reliance or unjust enrichment. The complaint alleges an equitable lien was created by virtue of the insurance policy language alone. Under that policy, Farmers agreed to pay medical expenses in the event of a covered injury. Those contracting with Farmers agreed to hold in trust for and to reimburse to Farmers any third party recovery up to the amount of medical benefits paid. Other benefit recipients, who were not parties to the insurance contract, promised Farmers nothing. Hence, Farmers’ obligation to pay medical benefits was independent of any right of reimbursement. Medical benefits were required to be paid whether or not there is any third party recovery and whether or not the particular recipients promised to reimburse Farmers. Farmers therefore did not detrimentally rely on a promise of reimbursement from a particular fund in performing its contractual obligations. Nor did it forego pursuing rights against its contracting insureds or others on the strength of express or implied promises of payment from third party recoveries, as in
 
 McCafferty
 
 v.
 
 Gilbank, supra,
 
 249 Cal.App.2d 569.
 

 The present matter is not one in which equity must come to the rescue of a party otherwise without recourse. The complaint does not allege, for example, that Farmers has been unable to recover reimbursement from the insureds, the parties who might otherwise have been unjustly enriched. It also does not allege the third party recoveries were paid by defendant to “others” not entitled thereto. Defendant never promised, expressly or impliedly, he would protect Farmers’ interests. On the bare allegations of the complaint, this matter appears to be nothing more than an attempt by Farmers to avoid the necessity of seeking repayment from the parties
 
 *457
 
 primarily responsible by simply giving notice to their legal representative. Demurrers were properly sustained to the first and eighth causes of action.
 
 [2]
 

 III
 

 Farmers contends the second and ninth causes of action state claims for breach of constructive trust. There it is alleged defendant became an involuntary trustee of the funds required to be reimbursed to Farmers when those funds were deposited in defendant’s trust account, and defendant breached the trust when he distributed the funds to others, including himself.
 

 “A constructive trust is an equitable remedy to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. [Citations.]”
 
 (Weiss
 
 v.
 
 Marcus, supra,
 
 51 Cal.App.3d at p. 600.) “The principal constructive trust situations are set forth in Civil Code sections 2223 and 2224. Section 2223 provides that ‘[o]ne who
 
 wrongfully
 
 detains a thing is an involuntary trustee thereof, for the benefit of the owner.’ (Italics added.) Section 2224 provides that: ‘[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust,
 
 or other wrongful act,
 
 is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.’ (Italics added.)”
 
 (Martin
 
 v.
 
 Kehl
 
 (1983) 145 Cal.App.3d 228, 237 [193 Cal.Rptr. 312].) As these sections suggest, “a constructive trust may be imposed in practically any case where there is a
 
 wrongful
 
 acquisition or detention of property to which another is entitled.”
 
 (Weiss
 
 v.
 
 Marcus, supra,
 
 51 Cal.App.3d at p. 600, italics added.)
 

 Here it is not alleged defendant wrongfully
 
 acquired
 
 the third party payments. Those funds were transferred to defendant in the normal course as satisfaction of the personal injury settlements. It is instead alleged defendant wrongfully
 
 detained
 
 the funds and thereafter breached the trust by disbursing the funds other than to Farmers. However, as is readily apparent, Farmers’ breach of trust claims are deficient for the same reason the first and eighth causes of action fail to state a claim. Farmers had no lien, equitable or otherwise, on any portion of the third party recoveries, at least as against defendant. Hence, defendant had no obligation to hold any portion of the third party recoveries in trust for Farmers.
 

 IV
 

 Farmers contends the third and tenth causes of action state claims to declare an equitable lien on the third party recoveries to the extent of
 
 *458
 
 Farmers’ payments on behalf of the insureds. Those claims allege that at the time the third party recoveries were deposited in defendant’s trust account, an equitable lien attached in favor of Farmers. As previously explained, no equitable lien attached to the funds as alleged. Hence, the third and tenth causes of action fail to state claims for declaratory relief, and demurrers to those claims were properly sustained.
 

 V
 

 Farmers contends the fourth and eleventh causes of action state claims for intentional interference with contract. Those claims allege Farmers had valid contracts with the insureds, defendant was aware of the contracts, and defendant interfered with those contracts by paying to someone other than Farmers that portion of the third party recoveries to which Farmers was entitled.
 
 [3]
 

 “It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. . . . The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant’s knowledge of this contract; (3) defendant’s intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. . . .”
 
 (Pacific Gas & Electric Co.
 
 v.
 
 Bear Stearns & Co.
 
 (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587], citations omitted.)
 

 Where, as in cases such as
 
 Weiss
 
 v.
 
 Marcus, supra,
 
 51 Cal.App.3d 590 and
 
 McCafferty
 
 v.
 
 Gilbank, supra,
 
 249 Cal.App.2d 569, the attorney pays funds to his client rather than the lienor, we fail to see how this can be construed as an act designed to induce breach or disruption of a contractual relationship. The attorney has essentially facilitated compliance with the contract by providing the client with the funds necessary for performance. Here, it is alleged defendant disbursed the funds to “others, including [himself].” It is not alleged these “others” exclude the insureds themselves, the logical recipients of the settlement proceeds, or other creditors of the insureds. Presumably, payment to the latter would free other funds of the insureds for use in compliance with their obligations to Farmers.
 

 At any rate, Farmers’ complaint is not that defendant interfered with Farmers’ contractual relationships with its insureds but that defendant failed
 
 *459
 
 to perform the insureds’ contractual obligations for them. The only alleged interference was defendant’s failure to pay a portion of the third party recoveries to Farmers. However, as a general matter, an attorney receiving payment of a judgment or settlement on behalf of his or her client has no obligation to satisfy the client’s debts out of that fund. The attorney is not obligated to pay, for example, the client’s dry-cleaning bill or credit card debts even if on notice thereof. It is only when the creditor has some property interest in the fund or a trust relationship exists that such an obligation might arise. As we have explained, Farmers had no equitable lien on any third party recoveries and no trust relationship existed between Farmers and defendant. Hence, the fourth and eleventh causes of action fail to state claims for intentional interference with contract. For the same reasons, the fifth and twelfth causes of action, alleging negligent interference with contract, also fail to state claims.
 

 Farmers contends demurrers to the fourth, fifth, eleventh and twelfth causes of action were not properly sustained because defendant’s general demurrers did not address these claims specifically. Demurrers were interposed as to
 
 all
 
 causes of action on the following grounds: (1) no equitable lien was created by the policy language; (2) the policy language failed to create a trust relationship between Farmers and defendant; (3) Farmers failed to give defendant adequate notice or demand for payment; and (4) the res is no longer in defendant’s possession. No distinct grounds were stated as to the interference claims. Nor did defendant’s memorandum in support of demurrers or the trial court’s order sustaining demurrers address the interference claims separately.
 

 A judgment of dismissal following an order sustaining general demurrers shall be affirmed if supported on any ground stated in the demurrers, whether or not relied upon by the trial court.
 
 (Carman
 
 v.
 
 Alvord
 
 (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) As previously explained, the basic premise of Farmers’ interference claims is that defendant was obligated to pay a portion of any third party recovery to Farmers either because Farmers had an equitable lien on such funds or because a trust relationship existed between defendant and Farmers. Defendant demurred to
 
 all
 
 causes of action in the complaint on the grounds, among others, Farmers had no equitable lien on any third party recoveries and no trust relationship existed. The trial court sustained the demurrers as to
 
 all
 
 causes of action. Because the fourth, fifth, eleventh, and twelfth causes of action fail to state claims due to the absence of an equitable lien or trust relationship, demurrers to those claims were properly sustained.
 

 VI
 

 The sixth and thirteenth causes of action allege claims for money had and received. They allege defendant “became indebted to [Farmers] in the sum
 
 *460
 
 alleged herein for money had and received by defendant!] for the use and benefit of [Farmers].” It is further alleged, the indicated sums have not been paid by defendant to Farmers.
 

 In the common law action of general assumpsit, it is customary to plead an indebtedness using “common counts.” (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 504, p. 538.) In California, it has long been settled the allegation of claims using common counts is good against special or general demurrers.
 
 (Pike
 
 v.
 
 Zadig
 
 (1915) 171 Cal. 273, 276 [152 P. 923].) The only essential allegations of a common count are “(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.” (4 Witkin,
 
 op. cit. supra,
 
 § 508, at p. 543.) A cause of action for money had and received is stated if it is alleged the defendant “is indebted to the plaintiff in a certain sum ‘for money had and received by the defendant for the use of the plaintiff.’ ”
 
 (Schultz
 
 v.
 
 Harney
 
 (1994) 27 Cal.App.4th 1611, 1623 [33 Cal.Rptr.2d 276].)
 

 The sixth and thirteenth causes of action do not satisfy this pleading requirement. Although those claims allege in conclusional fashion that defendant became indebted to Farmers “for money had and received by defendants for the use and benefit of [Farmers],” they also incorporate the allegations of all preceding claims, including the allegation Farmers’ interest in a portion of the third party recoveries is premised on an alleged equitable lien. Inasmuch as we have concluded Farmers has no such equitable lien, it has no claim to the money had and received by defendant. Demurrers were properly sustained to the sixth and thirteenth causes of action.
 

 VII
 

 The seventh and fourteenth causes of action seek a declaration of Farmers’ rights as against defendant to be reimbursed for funds deposited in defendant’s client trust account from any third party recovery. To the extent this claim seeks a declaration of Farmers’ right to funds
 
 currently
 
 in defendant’s client trust account, such declaration must necessarily be adverse. As alleged in the complaint, any third party recoveries have since been disbursed. As to Farmers’ right to be reimbursed by defendant in general, a right necessarily premised on the existence of an equitable lien or trust relationship, we have concluded no such right exists.
 

 Strictly speaking, a demurrer is not an appropriate weapon to attack a claim for declaratory relief inasmuch as the plaintiff is entitled to a declaration of its rights, even if adverse. (See
 
 Greenberg
 
 v.
 
 Hollywood Turf Club
 
 (1970) 7 Cal.App.3d 968, 978-979 [86 Cal.Rptr. 885].) However,
 
 *461
 
 because no benefit would be served by reversal and remand to the trial court for entry of a judgment declaring that Farmers has no right to recovery from defendant, this opinion shall serve as a declaration of rights and duties.
 
 (Cherry
 
 v.
 
 Home Sav. & Loan Assn.
 
 (1969) 276 Cal.App.2d 574, 578 [81 Cal.Rptr. 135].)
 

 The judgment is affirmed. Defendant shall receive his costs on appeal.
 

 Blease, J., and Morrison, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied May 14, 1997.
 

 [1]
 

 The policy language recited in the complaint does not include the phrase “by that person” after the word “held.” However, the parties agree the actual policy language includes “by that person” as expressed herein.
 

 [2]
 

 Having so concluded, we need not consider defendant’s contention Farmers failed to give adequate notice or demand for payment.
 

 [3]
 

 In its opening brief, Fanners contends, incorrectly, that the complaint alleges the insureds refused to reimburse Farmers because defendant “advised them that they did not have to honor the contractual trust agreement, advised them not to do so, and/or disbursed the moneys without paying [Farmers] . . . .” The complaint contains no allegations defendant advised the insureds they did not have to pay Farmers and should not do so.