[No. B179090. Second Dist., Div. Eight. Mar. 6, 2006.]

COUNTY OF LOS ANGELES, Plaintiff, v.
CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN
CALIFORNIA ADMINISTRATIVE COMPANY, Defendant and Appellant;
CHRISTIAN R. JUAREZ, Defendant and Respondent.

## COUNSEL

Reich, Adell, Crost & Cvitan, Alexander B. Cvitan, J. David Sackman and Carlos R. Perez for Defendant and Appellant.

Juarez & Associates and Christian R. Juarez for Defendant and Respondent.

## OPINION

**FLIER, J.**—The County of Los Angeles admitted that it owed Mohag Construction Co. (Mohag) $255,361[1] and interpleaded that sum.[2] Appellant Construction Laborers Trust Funds for Southern California Administrative Company, LLC (Trust Funds) and respondent Christian R. Juarez, an attorney, asserted claims, respectively, of $231,364 and $58,014 against the interpleaded amount; Developers Surety and Insurance Company (not a party to this appeal) asserted a claim of $68,000. The trial court gave Developers Surety and Insurance Company and Juarez priority over Trust Funds's claim with the result that Juarez and Developers Surety recovered 100 percent of their claims, and Trust Funds was awarded $114,106. Trust Funds appeals, contending that Juarez's lien is invalid. We find that Juarez is entitled to the imposition of an equitable lien and affirm.

## FACTS

### 1. The Claims and Claimants to the Interpleaded Funds

Trust Funds is the successor to the American Benefit Plan Administrators, Inc. (ABPA). On January 8, 2001, ABPA obtained in federal court a judgment for $198,285 against Mohag. ABPA appeared as a fiduciary and agent for the collection of employee benefit plans; the judgment was composed of unpaid fringe benefit contributions, interest, liquidated damages and attorney fees and costs under federal law. Delinquent contributions made up $120,093 of this judgment.[3] The action that culminated in this judgment is referred to hereafter as the "federal action."

Juarez and Mohag entered into a written fee agreement on February 29, 2000. The fee agreement provided for Juarez's services as Mohag's attorney in "the Matter," which the fee agreement defined as the federal action.

---

[1] Cents are omitted throughout the opinion.

[2] Neither the county nor Mohag are parties to this appeal. Mohag has recently been before us as an unsuccessful appellant in *Mohag Construction Co. v. County of Los Angeles* (Apr. 8, 2005, B173157 [nonpub. opn.]), which involved, among other things, the settlement of the claims asserted by Mohag and the county against each other. This prior controversy, and our previous opinion, are not relevant to the instant appeal, save for the fact that respondent Juarez, an attorney, represented Mohag in its settlement negotiations with the county, which is a circumstance that is material to this appeal. (See text, *post.*)

[3] Liquidated damages due under federal law were $33,048, attorney fees were $36,001, costs were $2,095, and prejudgment interest was $7,047.

Among other things, the fee agreement provided that Mohag granted Juarez a "lien on any and all claims or causes of action which are [the] subject of Attorney's representation of client in the Matter."

It is not disputed that, even before the entry of the judgment in the federal action, Mohag requested Juarez to represent it in a number of matters not connected with the federal action and that Juarez billed Mohag for these services under the same terms that were set forth in the fee agreement, even though the fee agreement covered only the federal action, i.e., "the Matter." Thus, according to a declaration executed by Juarez, he performed legal work for Mohag during the year 2000, including on one of the construction projects, the El Segundo project, that became a bone of contention between the county and Mohag. (See fn. 2, *ante.*) One of the points in controversy between Mohag and the county was the latter's alleged failure to make timely payments on the El Segundo project, which caused cash flow difficulties and resulting defaults by Mohag on its payments. Juarez continued to work for Mohag in trying to, and eventually succeeding, in settling in September 2001 the controversy over the El Segundo project.[4]

On May 7, 2001, during the negotiations with the county on the El Segundo project, Juarez wrote a letter addressed to the county, with a copy to the president of Mohag, that stated that Juarez was "placing an attorney's fees lien on any and all proceeds arising from the settlement" between Mohag and the county, and that this lien was "expressly provided in the retainer agreement signed by Mr. Jalal M. Banki on behalf of Mohag and perfected upon the execution of the retainer agreement." The letter stated that the amount of the lien was $55,000.

During the hearing that led to the judgment before us in this appeal, Juarez testified that he undertook to represent Mohag on these other matters "under the same terms" as the fee agreement.

2. *The Trial Court's Judgment Establishing Priorities Between the Claimants*

The trial court ruled that Developers Surety and Insurance Company was entitled to first place in its claim against the interpleaded funds "under an equitable right of subrogation on the El Segundo Project only." This was a claim for $68,000. Neither Trust Funds nor Juarez challenge this determination.

---

[4] According to Juarez's declaration, he handed over primary responsibility to the firm of Girardi & Keese in July 2001 because he could no longer afford to work for Mohag without being paid. However, Juarez stayed involved with the case until it settled.

As to the remainder of the interpleaded funds, the trial court determined that the remaining claims, including other claims by Developers Surety and Insurance Company, "should be determined on a first in time lien basis."

The trial court determined that Juarez's claim had priority over Trust Funds's claim. The court found that Juarez's lien was "created" on February 29, 2000. This predated Trust Funds's judgment lien of January 8, 2001.

## DISCUSSION

Trust Funds states in its opening brief: "The specific issue which relates to this appeal is not the date on which Juarez's lien was created or even the amount of the lien. Appellant [Trust Funds] does not seek to disturb those findings by the trial court. The sole issue on appeal is whether, as a matter of law, Juarez may assert an attorney's fee lien on the basis of an oral agreement, and a letter to the plaintiff County of Los Angeles, for fees arising from a different matter." Trust Funds goes on to contend that the fee agreement related only to the federal action, that Juarez could not base a lien on an oral agreement, and that he could not create a lien without the written consent of his client, i.e., Mohag.

Because the parties did not expressly brief whether this case presents an instance where the trial court imposed an *equitable* lien, we solicited the views of the parties on this issue prior to oral argument. (Gov. Code, § 68081.)

We conclude that Juarez is entitled to the imposition of an equitable lien. "An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property. (42 Cal.Jur.3d, Liens, § 10, p. 621.) It may arise from a contract which reveals an intent to charge particular property with a debt or 'out of general consider-ations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' (1 Jones, The Law of Liens (3d ed. 1914) § 27, pp. 24–25.) 'The basis of equitable liens is variously placed on the doctrines of estoppel, or unjust enrichment, or on the principle that a person having obtained an estate of another ought not in conscience to keep it as between them; and frequently it is based on the equitable maxim that equity will deem as done that which ought to be done, or that he who seeks the aid of equity must himself do equity.' (53 C.J.S., Liens, § 5, pp. 462–463, fns. omitted.)" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 453 [61 Cal.Rptr.2d 707].)

While a promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund, "even a mere promise to pay from a specific fund may suffice to create an equitable lien if considerations

of detrimental reliance or unjust enrichment are implicated. For example, where labor and material suppliers enhance the value of property, justifiably relying upon assurances they will be paid from a construction loan fund, an equitable lien on such fund will be recognized. [Citation.]" (*Farmers Ins. Exchange v. Zerin, supra*, 53 Cal.App.4th at p. 455.) " 'The rationale of the rule permitting recovery on a theory of equitable lien is essentially this: that it would be inequitable and unjust to withhold from those persons who have by their labor and materials enhanced the value of the property the loan fund [*sic*] which constituted a material inducement to them in supplying such labor and materials and upon which they relied for reimbursement. . . .' " (*Ibid.*)

■ It is not disputed that Juarez expended time and effort in representing Mohag in matters other than the federal action, notably in negotiating the settlement with the county, which resulted in the payment by county of the interpleaded amount. It is also undisputed that, based on representations by Mohag, Juarez believed that he was working for Mohag on matters other than the federal action under the same terms as were set forth in the fee agreement, which included a provision for a lien for services rendered. Juarez memorialized his understanding of this in his letter of May 7, 2001, to the county, and sent a copy of this letter to the president of Mohag. Thus, in representing Mohag in its negotiations with the county, Juarez relied on his understanding, not disputed by Mohag or even by Trust Funds in this appeal, that a substantial sum that Mohag owed him was secured by a lien. In continuing to work for Mohag even while he was not being paid, Juarez acted responsibly and in a manner that merits the application of an equitable remedy, i.e., an equitable lien.

The foregoing facts reflect that the necessary elements for the imposition of an equitable lien are present in this case. First, Mohag was at all times aware of the circumstance that Juarez was relying on a lien to recover his fees; in fact, it was in Mohag's best interests that Juarez continue to work for Mohag in reliance on the security afforded by a lien. Second, Juarez detrimentally relied on the existence of a security interest. Third, it can be said that Juarez's conduct deserves the protection of a court of equity, i.e., this is a case that satisfies the maxim that "he who seeks the aid of equity must himself do equity." Fourth, as a factual matter, Mohag and Juarez acted throughout under the assumption that a security interest existed. Fifth, it could be said that Mohag would have been unjustly enriched if it retained from the settlement funds that Juarez had earned as attorney fees. Thus, from a pragmatic perspective, the satisfaction of Mohag's liabilities from funds that justly belong to Juarez benefits, or enriches, Mohag at Juarez's expense.

■ We note that Trust Funds does not challenge "the date on which Juarez' lien was created or even the amount of the lien" and that it limits its

appeal to the specific point that a lien cannot be created by an oral agreement. While ordinarily an express lien is created by a written instrument, this is not true of an equitable lien, which, as noted, is not brought about by an express agreement between the parties but is imposed by the court as an equitable remedy.

Trust Funds contends that an equitable lien cannot be imposed in this case, since an attorney's lien may arise only from contract, or by "implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered," citing for the latter proposition *Wagner v. Sariotti* (1943) 56 Cal.App.2d 693, 697 [133 P.2d 430]. We agree that an *attorney's* lien is created by contract or by implication. This case, however, calls for the imposition of an *equitable* lien for the reasons we have given. An equitable lien is a restitutionary remedy given by a court of equity.[5] While, as in this case, a contractual relationship may play a role in the imposition of an equitable lien, such a lien is not created by contract, express or implied.[6]

Trust Funds contends that Juarez cannot appeal to equity because Mohag never received any of the interpleaded funds and therefore did not benefit from Juarez's efforts. This is an incorrect view of the matter, since the interpleaded funds were used to retire some of Mohag's liabilities, which benefited Mohag.

Finally, Trust Funds contends that Juarez could not acquire a security interest in Mohag's property without the client's, Mohag's, written consent. While this is true as a general proposition, it does not apply to an interest created by operation of law. Moreover, as a factual matter, it appears that Mohag actually agreed to extend the protection of a lien to Juarez, since this served Mohag's interests in ensuring that Juarez would continue to represent it.

---

[5] "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises. [¶] *Comment:* [¶] *a.* A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant not only by imposing a constructive trust and compelling the surrender to the plaintiff of property held by the defendant (see § 160), but also by imposing an equitable lien upon the property in favor of the plaintiff." (Rest., Restitution, § 161.)

[6] We respectfully disagree with *Wagner v. Sariotti, supra,* 56 Cal.App.2d at page 697, supported by the court in *Bartlett v. Pacific Nat. Bank* (1952) 110 Cal.App.2d 683, 689 [244 P.2d 91], that an equitable lien is created when the parties have contracted that the lawyer is to look to the judgment for his fee. This describes an attorney's lien that is implied (see 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 196, p. 250), not an equitable lien.

## DISPOSITION

The judgment is affirmed. Respondent is to recover his costs on appeal.

Cooper, P. J., and Boland, J., concurred.