Filed 4/1/21  Martello v. Merliss CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JEANNETTE MARTELLO, | B300268 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC 589157) |
| JOSHUA MERLISS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

————————————————

Crawford Law Group and Daniel A. Crawford for Plaintiff and Appellant.

Cheong, Denove, Rowell, Bennett & Hapuarachy and Wilkie Cheong for Defendant and Respondent.

————————————————

Plaintiff and appellant Jeannette Martello challenges the trial court's grant of summary judgment in favor of defendant and respondent Joshua Merliss. Martello performed hand surgery on Stella Madrid to correct injuries Madrid suffered from a faulty garage door. Merliss, who is an attorney, represented Madrid in a personal injury lawsuit and ultimately obtained a $100,000 settlement from the insurance company representing Madrid's landlord. When Martello was unable to obtain a share of the settlement proceeds as compensation for the medical work she performed, she filed suit against Merliss, alleging that he made false statements that prevented her from claiming a portion of the settlement.[1] Martello contends that there were triable issues of material fact as to all of her claims, and that the trial court therefore erred by granting summary judgment in favor of Merliss. We affirm.

## FACTS AND PROCEEDINGS BELOW

In June 2010, the garage door of the house Madrid was renting malfunctioned, severing the tip of one of Madrid's fingers. Madrid was taken to a hospital, where Martello successfully operated on her. As a condition of operating on her, Martello required Madrid to handwrite and sign a statement acknowledging that Martello was an independent contractor, and

---

[1] In addition to Martello's suit against Merliss, this case includes a cross-complaint by Madrid against Martello, alleging that Martello improperly interfered with Madrid's ability to collect her settlement check. In a prior appeal (*Martello v. Merliss* (Dec. 13, 2017, B277570) [nonpub. opn.]), we affirmed the trial court's denial of an anti-SLAPP motion to dismiss (see Code Civ. Proc., § 425.16) the cross-complaint. Except when necessary, we limit our discussion in this opinion to the facts and issues relevant to Martello's claims against Merliss.

that Madrid was financially responsible for any of Martello's bills that her insurance did not pay. Martello did not tell Madrid how much she would charge.

Martello suggested that Madrid should consult with Merliss about representing her in a personal injury lawsuit against her landlord. Shortly after the injury, Madrid met with and retained Merliss to represent her. Martello had previously referred patients to Merliss, with the understanding that if Merliss recovered any money for the patient, Martello would receive payment for her medical bills from the proceeds. In addition, Merliss represented Martello in other litigation, including cases in which Martello sued to collect unpaid debts from former patients. Three of these cases were active from 2010 until January 2012, while Merliss was representing Madrid. Although Martello had a law degree, Merliss sometimes gave her legal advice in situations where she had not formally hired him to represent her.

In September 2010, Madrid switched to a different doctor for continuing treatment of her hand injury. In February 2011, Martello sent Madrid a bill for $27,750 for the services she had rendered. Madrid did not pay the full amount, and over the next two years, Martello made several efforts to collect the debt. These included email correspondence with Merliss in which Martello attempted to enlist Merliss's help in convincing Madrid to sign a lien agreement to allow Martello to collect her payment from any future proceeds from Madrid's case. Martello also billed Madrid's health insurance provider, which ultimately sent Madrid a check for $1,375, but refused to pay any additional amount. Madrid made two installment payments totaling $350 toward Martello's bill, but she never forwarded to Martello the money she had received from her insurance company. After April 2012, Madrid

made no more payments to Martello, and she never signed the lien agreement Martello sent to Merliss.

On May 15, 2012, Merliss filed Madrid's personal injury lawsuit against her landlord. In July 2014, Martello filed a notice of lien in that case, claiming under penalty of perjury that she had "an outstanding medical lien in the amount of $32,130."

On May 22, 2015, Merliss wrote an email to Martello noting that there was a settlement conference in Madrid's lawsuit scheduled for the following day and asking, "How much is the least you will accept on your bill so that I can let [Madrid] know and make it a topic at the conference. Hopefully, you will get paid. Please be reasonable and realistic." At that settlement conference, the parties to the personal injury suit settled the case for $100,000. Because of Martello's filed notice of lien, the insurance company representing Madrid's landlord sent Merliss a check for $32,130 payable to both Martello and Merliss. Martello believed she was entitled to the full amount of the payment. Madrid disagreed and was willing to allow Martello only $7,000 as full satisfaction of the debt. Martello refused the offer and also refused to endorse the check. With the proceeds of the check still unclaimed two years later, the insurance company interpleaded the $32,130 with the trial court, where the money remains pending the outcome of litigation.

On July 23, 2015, Martello filed suit against Merliss, alleging causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, intentional interference with contractual relations, and unfair business practices. The gravamen of all of her claims was that Martello had a written lien agreement with Madrid, but that Merliss had improperly interfered with her ability to collect the money she was owed by making false and misleading statements. On February 27, 2019, Merliss filed a

4

motion for summary judgment, which the trial court granted. The trial court concluded that there was no evidence that Martello had a medical lien for the proceeds of the personal injury suit, nor that Merliss had a fiduciary duty to her. The court also determined that no evidence supported that Merliss made false statements to Martello about her rights regarding her claimed lien, and that any other allegedly false statements were outside the scope of the allegations in the complaint.

## DISCUSSION

Martello contends that the trial court erred by granting summary judgment in favor of Merliss because there were triable issues of material fact with respect to all of her causes of action. We begin by addressing an issue common to all of Martello's causes of action, namely whether Martello had a lien to the proceeds of Madrid's personal injury suit. We then consider each of Martello's causes of action in turn, and conclude that the trial court did not err. We thus affirm the judgment.

### A. *Principles of Summary Judgment Law*

Summary judgment is proper when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 370; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears an initial burden of showing that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (*Nealy v. City of Santa Monica, supra*, 234 Cal.App.4th at p. 370; *Aguilar, supra*, 25 Cal.4th at p. 849.) If the defendant meets this burden, the plaintiff has the burden to demonstrate one or more triable issues

5

of material fact as to the cause of action or defense. (*Aguilar*, *supra*, at p. 849.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

In reviewing summary judgment, "[w]e review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017–1018.)

**B.** ***There Is No Evidence Martello Had a Lien over the Proceeds of Madrid's Lawsuit***

A common question with respect to all of Martello's causes of action is whether she had a lien on the proceeds of Madrid's personal injury suit.

After arguing before the trial court that she had a lien, Martello "concede[d]" in her opening brief that the document Madrid signed before undergoing surgery on June 4, 2010 "did not create a lien." Apart from a single, unsupported claim that she "arguably had an equitable lien on Madrid's settlement money," Martello made no other argument in her opening brief to support that she had a lien. In her reply brief, Martello argued in support of her claim of a lien on two new grounds. She argued that she had an equitable lien, and also that she had a "consensual lien" under *Nicoletti v. Lizzoli* (1981) 124 Cal.App.3d 361 (*Nicoletti*).

" ' "Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' " (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10.) Martello has presented no explanation for her failure to make

6

her arguments regarding the lien in her opening brief. She has therefore forfeited them.[2]

Martello's claim also fails on the merits because she has failed to produce any evidence that she had or is entitled to an equitable lien. Courts have held that an equitable lien existed in cases where the parties did not have an explicit lien agreement, but only when the parties demonstrated that they intended for a party to have a right to a property or source of funds as security for an obligation. Thus, in a case involving an attorney's claim to the proceeds of a client's lawsuit, the court explained that "[t]he real question in each case is, whether or not the parties have contracted that the lawyer is to look to the judgment he may secure as security for his fee. If so, an equitable lien is created." (*Wagner v. Sariotti* (1943) 56 Cal.App.2d 693, 697.) The same is true with real estate liens: "An equitable lien may be imposed upon real property where the parties intend the property operate as security for the obligation." (*Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 598.) In a case similar to this one, where there was insufficient evidence that a plaintiff ever signed an agreement to allow her psychologist to recover his fees from the proceeds of the plaintiff's lawsuit, the court affirmed the trial court's refusal to impose an equitable lien in favor of the psychologist. (See *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 743–744.) At a minimum, for an equitable lien to be appropriate,

---

[2] Martello's one-sentence assertion, with no argument or citation to authority, that she might have had an equitable lien, was insufficient to preserve this issue. (See *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 ["unless a party's brief contains a legal argument with citation of authorities on the point made, the court may treat it as waived and pass on it without consideration"].)

the party claiming the lien must be able to show that she believed a lien existed, that the opposing party was aware of this belief and allowed it to persist. (See *County of Los Angeles v. Construction Laborers Trust Funds for Southern California Admin. Co.* (2006) 137 Cal.App.4th 410, 415.)

In this case, Martello has produced no evidence that Madrid ever agreed to give her a lien to the proceeds of the lawsuit. The only written agreement we have seen in the record is a handwritten document that Martello required Madrid to sign in the hospital before Martello would agree to operate on Madrid's hand. The document provides, "I have been informed by Dr. Martello that she is not an employee of Huntington Memorial Hospital. I have been told that Dr. Martello is an independent contractor. There will be a separate bill sent to me for her . . . services. As a courtesy to me, Dr. Martello's office will bill my insurance company. I accept financial responsibility for any portion of Dr. Martello's bill that is not covered by my insurance." The document makes no mention of a potential lawsuit, nor any indication that Martello would have any interest in its proceeds.

Subsequently, in November 2011, March 2012, and August 2012, Martello emailed Merliss to ask him to convince Madrid to sign a lien agreement. On the latter two occasions, she attached a document labeled "Stella Madrid Medical Lien" for Madrid to sign. This document, if Madrid had signed it, would have authorized Merliss to pay Martello's bills "and to withhold" the amount of the bills "from any settlement, judgment or verdict" obtained in Madrid's lawsuit. Madrid claims that she refused to sign the agreement, and Martello has produced no evidence to the contrary.

Thus, there is no evidence that Madrid ever intended to allow Martello to look to the proceeds of the personal injury suit

8

as a source of payment for her medical bills, nor has Martello presented any evidence that she reasonably expected a judgment or settlement of the case to secure her right to payment. Thus, Martello has failed to create a triable question of material fact that she is entitled to an equitable lien.

Martello also contends in her reply brief that, under *Nicoletti*, *supra*, 124 Cal.App.3d 361, a doctor who provides medical services to a patient automatically obtains a lien over any proceeds from a personal injury lawsuit arising from the patient's injury. This is a misreading of the case law. In *Nicoletti*, the court held that consensual medical liens took precedence over a judgment creditor's claim to the proceeds of a lawsuit, regardless of whether the doctors had filed a financial statement to perfect the lien. (See *id.* at pp. 369–370.) The case did not address the requirements for creating a medical lien, either contractual or equitable, and it certainly does not stand for the proposition that "consensual liens" (*id.* at p. 369) can be created without the consent of the party to be charged. We found no merit when Martello made the same argument in her previous appeal (see *Martello v. Merliss*, *supra*, B277570), and we reach the same conclusion now.

### C.     *Fraud and Negligent Misrepresentation Claims*

Martello argues that there is a triable question of material fact on her claims of fraud and negligent misrepresentation because Merliss made false statements to dissuade her from filing suit against Madrid for breach of contract or unjust enrichment. In May 2015, just after Madrid's personal injury suit settled, Martello contends that Merliss misled her by listing only three alternatives for her to pursue:

9

"1. You can accept $7,000.00 in full satisfaction of your lien.

"2. We can go to binding arbitration.

"3. I can file a motion with the trial court asking that your lien be stricken. Once it is, [the insurance company] will release the $32,000.00."

Merliss urged Martello "to accept the $7,000.00 which is more than fair considering the amount the case settled for and your risk of receiving only $1,375.00 should the matter be litigated or proceed to arbitration."[3]

According to Martello, Merliss failed to mention "an obvious fourth option, which was to sue Madrid to collect on the financial responsibility agreement." In addition, Martello claims that a month later, Merliss incorrectly told her that "the statute of limitations is long over for you to sue" Madrid. And she argues that when Martello threatened to sue Madrid at an earlier point in the case in August 2012, Merliss misled her by urging her to "[s]low down."

These arguments fail because Martello did not raise them before the trial court. "Though this court is bound to determine whether defendants met their threshold summary judgment burden independently from the moving and opposing papers, we are not obliged to consider arguments or theories . . . that were not advanced by plaintiffs in the trial court. 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial

---

[3] $1,375 was the amount of the payment Madrid received from the insurance company and did not forward to Martello.

court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 . . . .) 'A party is not permitted to change his [or her] position and adopt a new and different theory on appeal. . . .' [Citation.]" (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 (*DiCola*).)

In her proceedings before the trial court, Martello did not present her theory that Merliss defrauded her by attempting to dissuade her from filing suit against Madrid for breach of contract or unjust enrichment. Instead, Martello argued an entirely different theory of fraud, claiming that "Merliss made written and oral statements to [Martello] about her rights under her lien agreement with . . . Madrid." (Capitalization omitted.) She alleged that Merliss falsely told her "that her lien claim was subordinate to his own claim for attorney's fees; the amount of her claim was compromised due to the limits on his own claim for attorney's fees; and, [Martello] would have to agree to discount her lien claim substantially in order to receive any payment." To permit Martello to argue a completely different theory now, when Merliss did not have an opportunity to challenge them below, " 'would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*DiCola*, *supra*, 158 Cal.App.4th at p. 676.)

### D.     *Breach of Fiduciary Duty*

Martello claims that the trial court erred by finding no triable question of material fact on her claim of breach of fiduciary duty. According to Martello, Merliss had a fiduciary

11

duty to her as a current or former client, and he breached his duty by violating a number of California Rules of Professional Conduct in the Madrid case. Martello's argument fails because to state a claim for breach of fiduciary duty, a plaintiff must not only show that a fiduciary duty existed and that the defendant breached it, but also "damage proximately caused by that breach." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 646.) Martello has failed to create a triable question of material fact as to this last requirement.[4]

Martello claims that Merliss caused damages by preventing her from enforcing her right to collect from Madrid, but the evidence does not support these claims. The email correspondence between the parties in 2011 and 2012 shows that Merliss accurately described the law and Martello's legal rights. When Martello wrote to Merliss in February 2011 complaining that Madrid would not pay her, he advised her to "put the balance owed by her on a lien." In March 2012, when Martello complained that Madrid would not sign the lien agreement, Merliss encouraged her to "[s]end her a statement and lien," and "[t]ell her

---

[4] The trial court did not rely on the question of causation as a ground for granting summary adjudication in favor of Merliss on this cause of action. We therefore invited the parties, pursuant to Code of Civil Procedure section 437c, subdivision (m)(2) "to present their views on the issue by submitting supplemental briefs." In her supplemental brief, Martello argued for the first time that Merliss breached his fiduciary duty by disclosing confidential information and engaging in other misconduct in connection with his motion to have Martello declared a vexatious litigant. Martello did not make this claim either in her complaint or in her opposition to summary judgment. We therefore disregard it now. (See *DiCola, supra,* 158 Cal.App.4th at p. 676.)

12

you will forego collection if she signs the lien, [and] mails a copy to you and one to me." In August 2012, Merliss told Martello that Madrid "has to sign [the lien] for it to be enforceable." Martello has not presented any legal basis that these statements were an incorrect description of the facts or law. In the same August 2012 email conversation, when Martello threatened to obtain a judgment against Madrid if she did not agree to a lien, Merliss asked Martello to "[s]low down" so that he could discuss the issue with Madrid, and told Martello that "[i]f she will not agree, I will let you know." Martello could not have reasonably interpreted this as a signal to wait for years before attempting to enforce her claim against Madrid.

Nor is there evidence that Merliss's actions in settling Madrid's case in 2015 damaged Martello. Martello alleges that Merliss attempted to mislead her by demanding that she reduce her claim against Madrid to $7,000, without noting that she could sue Madrid for breach of contract or unjust enrichment. But these communications took place in May and June of 2015. Martello sued Merliss for fraud and breach of fiduciary duty in July. There is no evidence that Martello heeded Merliss's advice to her detriment, nor that any relevant statute of limitations expired in the intervening month.

Martello alleges that she suffered damages in additional ways. She claims that Merliss harmed her by failing to pursue collection efforts against Madrid, but there is no evidence that Merliss ever agreed to represent Martello to collect from Madrid. Martello also claims that she was damaged because Madrid cashed an insurance check for $1,375 and refused to forward the payment to Martello, and that the insurance company decided not to pay the remaining $27,750 bill from Martello. But there is no

13

basis for concluding that Merliss's alleged breach of fiduciary duty caused Martello to lose these payments.

### E. *Intentional Interference with Contractual Relations*

Martello claims that the trial court erred by finding no triable question of material fact on her claim of intentional interference with contractual relations. According to Martello, Merliss interfered with her contractual relationship with Madrid by advising Madrid to stop making partial payments toward the amount she owed Martello. We reject this claim because no reasonable factfinder could draw the conclusion Martello urges on the basis of the evidence she has produced.

Merliss denied advising Madrid to stop making payments on Martello's bill. In order to survive summary judgment, Martello was required to raise a triable question of material fact on this issue, or in other words, to present enough evidence to "allow a reasonable trier of fact to find the underlying fact in favor of" her. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) She claims that she achieved this via circumstantial evidence. Because Madrid ceased making payments on Martello's bill just before Merliss filed the personal injury suit on her behalf, she argues that a factfinder could reasonably infer that Merliss advised Madrid to stop making payments.

We agree with Martello that the temporal proximity of events can support an inference of causation. (See *City of Modesto v. Dow Chemical Co.* (2018) 19 Cal.App.5th 130, 153-154.) But in this case, the evidence is too flimsy to support a reasonable inference in Martello's favor. Martello claims that Madrid made "several" payments toward her bill, but according to Martello's own declaration, there were exactly two payments: Madrid sent her a check for $300 in December 2011, and another for $50 in

14

April 2012. Although Madrid wrote a letter accompanying her first payment stating that she planned to pay Martello "twice a month," she never did.

Nor did Madrid stop paying Martello when Merliss began representing her. Merliss agreed to take her case in June 2010, more than a year *before* Madrid sent the first payment. Indeed, by the time Madrid made the first payment, Merliss had corresponded with Martello twice regarding Madrid's debt, first in February 2011, and again in November of the same year. If Merliss had advised Madrid not to pay Martello, the logical time to do so would have been after one of these conversations. Martello again contacted Merliss regarding Madrid's debt in March 2012, and in April 2012, Madrid sent Martello the second payment. A few weeks later, Merliss filed Madrid's lawsuit. Given this sequence of events, there is no reasonable basis for inferring that Merliss advised Madrid to stop making payments.

## F.    *Unfair Business Practices*

Martello's final cause of action was for unfair business practices. In her appellate brief, Martello contends that Merliss's alleged violations of the California Rules of Professional Conduct constituted unlawful or fraudulent business practices under Business and Professions Code section 17200. This claim fails both because Martello has failed to raise the issue in her pleadings, and because she has failed to create a triable question of material fact as to causation.

In her complaint, Martello alleged that Merliss had "engaged in unfair or fraudulent conduct concerning [Martello's] rights under her lien agreement with . . . Madrid." But there is no indication in the complaint that the alleged unfair business practices were connected with Merliss's alleged violations of the

15

California Rules of Professional Conduct, as Martello alleges on appeal.

"[S]ummary judgment cannot be *denied* on a ground not raised by the pleadings." (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663.)  As the court explained in *Bostrom*, this is not a burdensome rule:  "If either party wishes the trial court to consider a previously unpleaded issue in connection with a motion for summary judgment, it may request leave to amend.  [Citations.]  Such requests are routinely and liberally granted.  However, ' " '[i]n the absence of some request for amendment there is no occasion to inquire about possible issues not raised by the pleadings.' " '  [Citations.]  Declarations in opposition to a motion for summary judgment 'are no substitute for amended pleadings.' "  (*Id.* at pp. 1663–1664.)  Martello made no such motion to amend the pleadings, but simply changed her theories whenever she found it helpful to do so.  It is not fair either to her opponent in the litigation, or to the court to allow her to present an ever moving target.

Martello's argument also fails because she has failed to produce evidence of causation.  California's unfair competition law allows for a private citizen to bring a cause of action, but only if the person "has lost money or property *as a result of* the unfair competition."  (Bus. & Prof. Code, § 17204, italics added.)  This language "imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property."  (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 849.)  As we have explained above in the section on breach of fiduciary duty (see Discussion part D, *ante*), Martello has failed to create a triable question of material fact as to whether Merliss's alleged violations of the California Rules of Professional Conduct caused her any damages.  Thus, Martello has also failed to produce

evidence that those same alleged violations caused her to suffer a loss for purposes of her claim of unfair business practices.

## DISPOSITION

The judgment of the trial court is affirmed.  Respondent is awarded his costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

17