Filed 11/26/14  Hidalgo v. Kazi Foods CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SILVIO HIDALGO, | B247488 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC450323) |
| v. | |
| KAZI FOODS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark V. Mooney, Judge.  Affirmed.

Rosen & Associates, Robert C. Rosen, John B. Wallace, and David Paul Bleistein for Plaintiff and Appellant.

Gareeb Law Group, Alexander S. Gareeb and Fadi K. Rasheed for Defendants and Respondents Kazi Foods, Inc. and Kazi Management VI, LLC.

Wilson, Elser, Moskowitz, Edelman & Dicker, Laura P. Kelly and Robert Cooper for Defendant and Respondent Zubair Kazi.

Plaintiff and appellant Silvio Hidalgo appeals from the judgment entered in favor of defendants and respondents Zubair Kazi (Kazi), Kazi Foods, Inc. (KFI), and Kazi Management VI, LLC (KMVI) (collectively, defendants) after the trial court sustained demurrers, without leave to amend, to causes of action asserted in plaintiff's fourth amended complaint for fraud, intentional and negligent misrepresentation, breach of fiduciary duty, promissory estoppel, and common count, and causes of action asserted in plaintiff's fifth amended complaint for breach of oral and implied contract and breach of the implied covenant of good faith and fair dealing. We affirm the judgment.

## BACKGROUND

Plaintiff is a shareholder of Cryobanks International, Inc. (Cryobanks), a private, for-profit Delaware corporation with approximately 150 shareholders. Cryobanks is no longer an operating company. Kazi was the chairman of the Cryobanks board of directors and owns KFI and KMVI. KFI is a California corporation. KMVI is a U.S. Virgin Islands company and a majority shareholder of Cryobanks.

Plaintiff filed his original complaint in this action on December 1, 2010, a first amended complaint on March 1, 2011, and a corrected first amended complaint on March 2, 2011. In these complaints, plaintiff asserted 11 causes of action for alleged wrongdoing arising out of his purchase of one million shares of Cryobanks common stock for $1.24 million.

Defendants filed demurrers and motions to strike the corrected first amended complaint on various grounds, including expiration of the statute of limitations and failure to state a claim. The trial court sustained the demurrers with leave to amend.

Plaintiff filed a second amended complaint on July 27, 2011. After defendants again filed demurrers and motions to strike, the parties stipulated to allow plaintiff to file a third amended complaint.

Plaintiff filed a third amended complaint on December 5, 2011. Defendants filed demurrers and motions to strike the third amended complaint, and the trial court sustained the demurrers with leave to amend. The trial court further ordered that no new parties or causes of action could be added to the amended complaint without leave of court.

2

**Fourth amended complaint**

On May 9, 2012, plaintiff filed a fourth amended complaint, one of the two operative complaints in this action, in which he asserted causes of action for common count, breach of oral promise, breach of oral contract, breach of the implied covenant of good faith and fair dealing, breach of implied contract, fraudulent inducement, intentional misrepresentation, negligent misrepresentation, conspiracy to defraud, breach of fiduciary duty, and promissory estoppel.

Defendants demurred and filed motions to strike all of the causes of action asserted in the fourth amended complaint. They argued that plaintiff failed to state a claim for fraudulent inducement and intentional and negligent misrepresentation because he failed to identify the persons who made the alleged fraudulent misrepresentations, and when, how, and to whom the representations were made and because plaintiff failed to allege justifiable reliance and causation. Defendants further argued that plaintiff's claim for conspiracy to defraud, as alleged, could not be asserted in a direct action but must be brought in a shareholder derivative action. Defendants argued that plaintiff's breach of contract causes of action were barred by the statute of limitations and by plaintiff's own allegation that defendants' sale of Cryobanks stock to him was illegal.

Following a July 17, 2012 hearing, the trial court sustained the demurrers and granted plaintiff leave to amend only three causes of action -- breach of oral contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing.

**Fifth amended complaint**

On August 7, 2012, plaintiff filed his fifth amended complaint, in which he alleged that the applicable statutes of limitation were tolled by the doctrine of delayed discovery and by Kazi's conduct that had lulled plaintiff into forbearing from legal action against defendants. Plaintiff further alleged that defendants were equitably estopped from asserting a statute of limitations defense because they had fraudulently concealed their wrongdoing and breached affirmative duties to disclose material facts that were the basis of plaintiff's claims.

3

Defendants filed demurrers and motions to strike the fifth amended complaint. At the December 6, 2012 hearing on those motions, the trial court sustained the demurrers without leave to amend. Judgment was subsequently entered in favor of defendants, and this appeal followed.

## PLAINTIFF'S CONTENTIONS

Plaintiff contends the trial court erred by sustaining, without leave to amend, defendants' demurrers to the causes of action asserted in the fourth amended complaint for fraudulent inducement, common count, intentional and negligent misrepresentation, breach of fiduciary duty, promissory estoppel, conspiracy to defraud, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. Plaintiff further contends the trial court erred by sustaining, without leave to amend, the demurrers to causes of action asserted in the fifth amended complaint for breach of oral and implied contract and breach of the implied covenant of good faith and fair dealing.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

4

## II. Fraud claims

### A. *Applicable legal principles*

The elements of fraud are a false representation of a material fact, knowledge of the falsity, intent to induce another to rely on the representation, reliance, and resulting damage. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792 (*West*).) Fraud allegations must be pleaded with specificity. (*Id.* at p. 793.) General or conclusory allegations are not sufficient; rather, each element of fraud must be alleged factually and specifically. (*Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.) "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made. [Citation.]" (*West, supra*, 214 Cal.App.4th at p. 793.) A fraud claim based on the omission or nondisclosure of information must be supported by factual allegations establishing some duty of disclosure on the part of the defendant. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 346.)

### B. *Plaintiff's fraud allegations*

In his fourth amended complaint, plaintiff alleges that defendants made the following false representations or omissions: (1) Cryobanks was a safe investment, (2) Cryobanks would go public, (3) plaintiff's Cryobanks stock was tradable, (4) public trading of Cryobanks stock was imminent, (5) it was urgent that plaintiff immediately invest, (6) Cryobanks required a minimum $1 million investment, (7) there would be opportunities for plaintiff to sell his Cryobanks stock, (8) Cryobanks had engaged in prior rounds of raising capital, (9) defendants' motivation was Kazi's friendship with plaintiff, (10) it was certain that Cryobanks would go public, (11) the Oppenheimer investment bank was raising money for Cryobanks to go public, (12) Cryobanks's share price would be $7.00 per share upon its initial public offering, (13) Cryobanks's doctors were confident about Cryobanks's future prospects, and (14) defendants failed to disclose a

5

scheme by Cryobanks creditor Syed Raheel (Raheel) to acquire Cryobanks's assets. Plaintiff further alleges that defendants knew that the foregoing representations and omissions were false and misleading; that plaintiff relied on the false representations when he purchased $1,040,000 of Cryobanks stock from Kazi on November 16, 2004, and again when he purchased an additional $200,000 of Cryobanks stock from KFI on January 4, 2006; and that the Cryobanks stock is now worthless.

### C. *Failure to state a claim*

Plaintiff's allegations are insufficient to state a claim for fraud under any of the causes of action asserted in his fourth amended complaint. Plaintiff alleges no facts establishing who, when, where, and by what means defendants made the alleged misrepresentations. Plaintiff fails to allege any conduct whatsoever by KFI or KMVI, or any basis for attributing any alleged misrepresentations by Kazi to those corporate defendants. Plaintiff's conclusory allegations do not satisfy the requirement that fraud claims must be pleaded with specificity. (*West, supra*, 214 Cal.App.4th at p. 793.)

Plaintiff's fraud claims premised on nondisclosure of information fail for similar reasons. (*Goodman v. Kennedy, supra*, 18 Cal.3d at p. 347 [mere conclusory allegations that omissions were intentional and for the purpose of defrauding plaintiffs and bringing about a stock purchase and that plaintiffs relied on omissions in making the purchase were insufficient to state a claim for fraud].) The omissions-based fraud claims also fail because plaintiff alleges no facts establishing a duty of disclosure by defendants. Plaintiff claims that such a duty existed because of the confidential relationship between him and Kazi. He alleges that this confidential relationship arose because "Kazi frequently told Plaintiff that they were '*best friends*.'" Mere friendship, however, is insufficient to establish a confidential relationship. (*Kudokas v. Balkus* (1972) 26 Cal.App.3d 744, 750.) Plaintiff's allegations that Kazi owed him a duty of disclosure or a fiduciary duty as a director of Cryobanks and as the owner of KMVI, Cryobanks's majority shareholder, cannot support his claims for individual relief. An action is individual only if the stock of an individual plaintiff is the only stock affected adversely. When the corporation has lost profits and opportunities, rendering all the shares

valueless, and "the injury is to the 'whole body of stock,' the action must be derivative. [Citation.]" (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 127.) Here, the alleged harm suffered by plaintiff -- loss of his investment in Cryobanks -- is common to all of Cryobanks's shareholders. Plaintiff's only avenue of redress for his causes of action premised on breach of duty is therefore a shareholder derivative action. (*Ibid*.)

Finally, plaintiff's fourth amended complaint fails to state any claim for relief based on conspiracy to defraud. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.) Liability based on conspiracy is derivative -- it is based upon the commission of an actual tort. (*Id*. at p. 511.) Plaintiff's failure to state a cause of action for fraud accordingly bars any claim for relief based on conspiracy to defraud.

The trial court did not err by sustaining the demurrers to plaintiff's causes of action for fraudulent inducement, intentional and negligent misrepresentation, breach of fiduciary duty, and conspiracy to defraud.

## III. Promissory estoppel

"Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) The elements of a promissory estoppel claim are a "clear and unambiguous" promise; actual reliance by the party to whom the promise is made; reliance that is both reasonable and foreseeable; and resulting injury. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.) A "promise" for purposes of promissory estoppel means "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." (Rest.2d Contracts, § 2, subd. (1).) A party claiming estoppel must specifically plead all facts relied on to establish its

7

elements.  (See *Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.)

In his fourth amended complaint, plaintiff alleges that Kazi promised to "protect Plaintiff's investment" and to "fully pay back Plaintiff"; that plaintiff relied on those promises by purchasing Cryobanks stock and by forbearing from taking legal action against defendants; that plaintiff's reliance was reasonable in light of his friendship with Kazi; and that plaintiff was damaged because Kazi allowed Cryobanks's assets to be transferred out of plaintiff's reach.

Plaintiff's promissory estoppel claim fails because his alleged injury cannot be remedied in an individual action for damages.  The alleged harm -- transfer of Cyrobanks's assets out of plaintiff's reach, can be properly remedied only in a shareholder derivative action.  "Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it.  The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. . . .  [¶]  An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'"  [Citation.]"  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108, quoting *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107, fn. omitted.)

The trial court did not err by sustaining defendants' demurrers to the promissory estoppel cause of action.

IV.  **Common count claims**

The essential elements of a common count are "'(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.'  [Citation.]"  (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460.)  In his common count claims, plaintiff alleges the same facts as those alleged in his promissory estoppel and fraud claims.  He alleges that Kazi promised that defendants

8

would repay plaintiff's investment in Cryobanks, that plaintiff understood he was purchasing stock that could be publicly traded, that Kazi misrepresented that Cryobanks would "go public," that public trading of Cryobanks stock was imminent, that it was urgent that plaintiff immediately invest, that the minimum investment was one million shares, that there would be opportunities for plaintiff to sell his Cryobanks stock, that Cryobanks had previously raised capital, that Kazi's friendship with plaintiff was the motive for informing plaintiff of the investment opportunity, that Cryobanks's doctors were confident of the company's future, and that plaintiff paid nothing for 800,000 Cryobanks shares. Plaintiff further alleges that Kazi failed to disclose a secret plan by Cryobanks creditor Raheel to acquire the company's assets and that Kazi had a duty to make such a disclosure because a confidential relationship existed between him and Kazi.

"When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable. [Citations.]" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) Plaintiff's common count claims thus fail for the same reason as his promissory estoppel and fraud causes of action fail. The trial court did not err by sustaining the demurrers to the common count causes of action.

## V. Contract claims

### A. Plaintiff's allegations

In his fifth amended complaint, plaintiff alleges that he paid $1,040,000 to KMVI in November 2004 and $200,000 to KFI in January 2006 in exchange for one million shares of Cryobanks stock. Plaintiff further alleges that these stock purchases were the subject of an oral or implied contract between defendants and himself and that the contract was "based on" and "partly memorialized by" two stock purchase agreements. The stock purchase agreements, both dated November 5, 2005, and signed by plaintiff as "purchaser" are attached as exhibits to the fifth amended complaint.

Both stock purchase agreements contain the following provisions concerning resale restrictions applicable to Cryobanks stock:

9

"3. The purchaser understands that the Securities have not been registered under the Securities Act of 1933, or any state securities law, must be held indefinitely, and may not be sold or disposed of unless a registration statement with respect to such Securities has become effective under said Act or Cryobanks International[,] Inc. has been satisfied that such registration is not required.

"[¶] . . . [¶]

"7. A legend will be placed on all the certificates representing the securities in substantially the following form:

"These securities have not been registered under the Federal Securities Act of 1933, or any other state or federal law. They may be resold only if they are registered under applicable state and federal laws, or if they are exempt from the registration requirements of such laws."

Plaintiff alleges the following breaches of the implied and oral contract:

(1) Defendants breached the contract by failing to deliver stock certificates within 30 days as promised in a facsimile transmittal sheet dated November 16, 2004, and attached as an exhibit to the fifth amended complaint. The facsimile transmittal is directed to plaintiff from Sharon Vensor of KMVI and states in relevant part: "Please consider this as acknowledgment that we have received $1,040,000.00 for the purchase of 400,000 shares of Cryo Stock. [¶] You will be receiving your Certificate for the Shares within the next 30 days or sooner." In his fifth amended complaint, plaintiff asks the court to compare that facsimile transmittal sheet with three stock certificates attached as exhibits to the complaint. The stock certificates, each dated December 22, 2004, certify that plaintiff is the owner of a total of one million shares of Cryobanks common stock. Each of the stock certificates bears the following advisement:

"THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE 'ACT'), OR THE SECURITIES LAWS OF ANY STATE AND WERE ISSUED IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE ACT AND SUCH LAWS. THE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE

TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND SUCH LAWS PURSUANT TO REGISTRATION OR EMPTION [*sic*] THEREFROM.  INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME."

(2)  Defendants failed to deliver publicly tradeable stock, but instead delivered restricted stock subject to undisclosed prohibitions against sale.

(3)  A condition subsequent to the contract, that Cryobanks would "go public," "as affirmatively represented to Plaintiff in writing" in exhibit 12 to the fifth amended complaint, did not occur.  Exhibit 12 is a document entitled "Transferee Statement Made To Cryobanks International, Inc.," dated December 29, 2005, and signed by plaintiff as "Transferee."  That document states in part:

> "5.  I understand that Cryobanks International, Inc., and Biostem, Inc. have entered into a Merger Agreement dated November 21, 2005 pursuant to which Cryobanks International, Inc. will merge with and into Biostem, Inc. In consideration of the transfer of the Shares, the undersigned Transferee agrees to vote or consent, as applicable, to the Merger and irrevocably appoints Zubair Kazi as his proxy and attorney in fact, coupled with an interest to vote the Shares in favor of the Merger or to consent thereto, on behalf of the undersigned."

(4)  Defendants did not vote in favor of the merger by which Cryobanks was to go public, referred to in exhibit 12 to the fifth amended complaint.

(5)  Defendants prevented Cryobanks from going public by causing Cryobanks to default on a debt owed to a creditor who subsequently foreclosed on Cryobanks's assets.

(6)  Defendants repudiated the contract by providing plaintiff with a document falsely stating the price plaintiff paid for 800,000 shares was $0.00.

**B.  *Plaintiff's cause of action premised on Cryobanks's failure to go public fails to state a claim***

Plaintiff's fifth amended complaint fails to state a breach of contract claim based failure of a condition subsequent.  His allegation that defendants "affirmatively

11

represented" to him "in writing" in exhibit 12 to the fifth amended complaint that Cryobanks "will go public" conflicts with the contents of exhibit 12. Exhibit 12, the Transferee Statement signed by plaintiff, contains no affirmative representation by any of the defendants and nowhere states that Cryobanks "will go public." Rather, exhibit 12 contains a representation by plaintiff that the shares acquired by him will not be resold or otherwise disposed of unless the shares are registered under the federal Securities Act. "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits. [Citations.]" (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) Plaintiff has failed to state a breach of contract claim based on a representation that Cryobanks would go public.

### C. Plaintiff's claims based on failure to deliver publicly tradeable stock, alleged repudiation of contract, and breach of the implied covenant of good faith and fair dealing are barred by the statute of limitations

Statutes of limitation "'prescribe the periods beyond which' a plaintiff may not bring a cause of action. [Citations.]" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395 (*Norgart*).) The purpose of these statutes is to protect defendants from the claims of dilatory plaintiffs, and to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion. (*Ibid.*) The statute of limitations operates in an action as an affirmative defense. (*Id.* at p. 396.) Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action. (*Id.* at p. 397.)

"The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.]" (*Norgart, supra,* 21 Cal.4th at p. 397.) "In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]." (*Ibid.*)

12

Plaintiff's causes of action for breach of oral contract and breach of implied contract are governed by the two-year limitations period set forth in Code of Civil Procedure section 339.  (Code Civ. Proc., § 339, subd. (1) [claims based on a contract, obligation, or liability not founded upon an instrument of writing]; *Blaustein v. Burton* (1970) 9 Cal.App.3d 161, 185 [breach of implied contract claim governed by two-year limitations period of Code of Civil Procedure section 339].)  As we discuss, plaintiff's breach of contract claims premised on the failure to deliver publicly tradeable stock and on defendants' alleged repudiation of contract are barred by the statute of limitations.

Plaintiff's breach of contract claims premised on defendants' failure to deliver publicly tradeable Cryobanks stock are time-barred.  The stock purchase agreements which plaintiff alleges "partially memorialized" the oral and implied contract he seeks to enforce expressly state that the Cyrobanks shares purchased by plaintiff had not been registered under applicable federal and state securities laws and could not be resold. Plaintiff signed the stock purchase agreements on November 5, 2005, and accordingly had notice as of that date that the shares he had purchased could not be publicly traded. Plaintiff reaffirmed his understanding that his Cryobanks shares could not be publicly traded when he signed the December 29, 2005 Transferee Statement attached as exhibit 12 to the fifth amended complaint.  The Transferee Statement contains the following representations by plaintiff:

> "3.  The Shares are being or will be acquired solely for my own account, for investment, and not with a view to their resale, distribution, subdivision, or fractionalization and I have no reason to anticipate any change in circumstance, financial or otherwise, nor the occurrence of any particular event that would cause me to sell or distribute, or necessitate or require the sale or distribution of, the Shares.

> "4.  I will not resell or otherwise dispose of the Shares or any interest in any of them unless the Shares are registered under the federal Securities Act of 1933, as amended ('Act'), and applicable state laws or exempt from registration and/or qualification."

13

Plaintiff did not commence this action until December 1, 2010, more than two years after he had notice that his Cryobanks shares could not be publicly traded. His breach of oral and implied contract causes of action premised on the non-delivery of publicly tradeable Cryobanks stock are therefore barred by the two-year statute of limitations. (Code Civ. Proc., § 339, subd. (1); *Blaustein v. Burton, supra*, 9 Cal.App.3d at p. 185.)

Plaintiff's breach of contract claim based on defendants' alleged repudiation of the contract by providing plaintiff with a document stating that plaintiff paid nothing for 800,000 shares of Cryobanks stock is also time-barred. In his corrected first amended complaint, plaintiff alleged that he was presented with this document in September 2008 -- more than two years before he commenced the instant action. The facts alleged in plaintiff's prior pleadings may serve as a basis for demurrer as to his fifth amended complaint. (See *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.) The document he received in September 2008 led plaintiff to suspect that there were irregularities in the stock purchase transaction.

"The statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by wrongdoing -- when the plaintiff has notice of information or circumstances that would put a reasonable person on inquiry. . . . Once a plaintiff suspects wrongdoing and therefore has an incentive to sue, he or she must decide whether to file suit or sit on his or her rights. When a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her. [Citations.]" (*San Francisco Unified School Dist. v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318, 1326-1327.) Plaintiff's cause of action based on alleged repudiation of contract accrued more than two years before he commenced this action and is barred by the statute of limitations.

Because plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is based "upon a contract, obligation or liability not founded upon an instrument of writing," it too is subject to the two-year statute of limitations set forth in Code of Civil Procedure section 339. Plaintiff's breach of oral and implied contract

14

claims are barred under the two-year statute of limitations and fail as a matter of law. The trial court accordingly did not err by sustaining defendants' demurrers to the breach of implied covenant of good faith and fair dealing.

### D. *Plaintiff failed to adequately plead tolling*

The court properly may sustain a demurrer and deny leave to amend based on the expiration of the limitations period. (*McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 802.) A plaintiff can defeat the demurrer by pleading facts showing the tolling of the limitations period. (*Stafford v. Ballinger* (1962) 199 Cal.App.2d 289, 295.) When a complaint shows on its face or on the basis of judicially noticeable facts that a cause of action is barred by the applicable statute of limitations, the plaintiff must plead facts that show an excuse, tolling, or some other basis for avoiding the statutory bar. (*Grange Debris Box & Wrecking Co. v. Superior Court* (1993) 16 Cal.App.4th 1349, 1359-1360, 20 Cal.Rptr.2d 515, disapproved on another ground in *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 388.)

Plaintiff alleges that the applicable limitations period was tolled because Kazi lulled plaintiff into forbearing from suing, because the doctrine of delayed discovery applies, and because defendants are equitably estopped from asserting a statute of limitations defense by their failure to disclose material facts and by their fraudulent concealment of wrongdoing. We address each of these theories below and conclude there is no basis for tolling or suspending the statute of limitations in this case.

### 1. Delayed discovery

The delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.]" (*Norgart, supra*, 21 Cal.4th at p. 397.) "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof -- when, simply put, he at least 'suspects . . . that someone has done something wrong' to him [citation]." (*Ibid.*) The plaintiff "has reason to suspect" when he has notice or information of circumstances to put a reasonable person on inquiry. (*Id.* at p. 398.) The plaintiff need not know "'specific "facts" necessary to

15

establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place -- he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does [citation]." (*Ibid.*, fn. omitted.)

Plaintiff argues that accrual of his breach of contract claims should be delayed until he discovered defendants' alleged breaches, but the "discovery rule" is applied in breach of contract actions only when the breach "is committed in secret" or is concealed. (*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1309, 1311.) The allegations in the fifth amended complaint do not show that defendants concealed material facts concerning plaintiff's stock purchase. Rather, the facts alleged show that plaintiff received written disclosure, in the November 2005 stock purchase agreements, in the December 2005 Transferee Statement he signed, and on the Cryobanks stock certificates themselves, that he was receiving restricted stock that could not be publicly traded. The facts alleged in plaintiffs' fifth amended complaint defeat rather than support application of the delayed discovery doctrine.

## 2. Equitable estoppel

Plaintiff next invokes the doctrine of equitable estoppel.[1] Equitable estoppel, in the context of statutes of limitation """"comes into play only after the limitations period has

---

[1]    Plaintiff also claims to have invoked the doctrine of equitable tolling. "Equitable tolling and equitable estoppel are distinct doctrines." (*Lantzy v. Centex Homes, supra*, 31 Cal.4th at p. 383.) Equitable estoppel applies only after the limitations period has run and addresses circumstances in which a party is estopped from asserting the statute of limitations as a defense to an untimely action because his conduct had induced another into forbearing from legal action within the limitations period. (*Ibid.*) Equitable tolling, in contrast, stops the running of the limitations period "when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192), ordinarily while a plaintiff pursues an administrative remedy rather than litigation. (See generally *Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1106-1107.) In his fifth amended complaint, plaintiff does not allege equitable tolling, nor does he allege pursuit of any other remedy prior to filing his lawsuit.

16

run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.""'" (*Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 96, fn. omitted, quoting *Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 847-848.)

"'"'[F]our elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" [Citations.]" (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37 (*Honeywell*).) In addition, "[t]he defendant's statement or conduct must amount to a misrepresentation bearing on the *necessity* of bringing a timely suit; the defendant's mere denial of *legal liability* does not set up an estoppel. [Citations.]" (*Lantzy v. Centex Homes, supra*, 31 Cal.4th at p. 384, fn. 18.) Finally, the doctrine of equitable estoppel only applies if "the plaintiff proceeds diligently once the truth is discovered [citation]." (*Ibid.*)

The facts alleged in the fifth amended complaint and its attachments indicate that plaintiff was not "ignorant of the true state of facts." (*Honeywell, supra*, 35 Cal.4th at p. 37.) The absence of such ignorance is established by the stock purchase agreements, stock certificates, and Transferee Statement attached as exhibits to the fifth amended complaint, all of which clearly state that the Cyrobanks shares plaintiff had purchased were restricted and could not be publicly traded. The facts alleged in the fifth amended complaint also indicate that plaintiff did not proceed diligently after he received notice of defendants' alleged wrongdoing. Plaintiff alleges that he sent Kazi a letter complaining about Kazi's wrongdoing on December 16, 2009, more than four years after he learned that his Cryobanks shares could not be publicly traded, and more than two years after the statute of limitations had expired on his breach of contract claim.

Under the facts pled in the fifth amended complaint, plaintiff has failed to set forth the required elements of equitable estoppel.

17

### 3. Fraudulent concealment

Plaintiff also contends that the applicable limitations period was tolled by the separate doctrine of fraudulent concealment. Under this doctrine, a defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations. (*Bank of America v. Williams* (1948) 89 Cal.App.2d 21, 25.) The limitations period will be tolled if the plaintiff establishes the substantive elements of fraud and an excuse for late discovery of the facts. To do so, the plaintiff must show that he was not at fault for failing to discover the cause of action and had no actual or presumptive knowledge of the facts sufficient to put him on inquiry. (*Snyder v. Boy Scouts of America, Inc.* (1988) 205 Cal.App.3d 1318, 1323.)

Here, plaintiff cannot claim he was induced into forbearing from filing his lawsuit any later than 2005. At that time, he received written notice that the shares of Cyrobanks stock he had purchased could not be publicly traded. Plaintiff alleges no facts as to what material information defendants purportedly concealed from him thereafter. Plaintiff's allegation that the statute of limitations was tolled as the result of defendants' fraudulent concealment fails for the same reasons that his fraudulent concealment cause of action fails. His general and conclusory allegations are insufficient; fraud must be pled specifically. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) Plaintiff has failed to do so.

The trial court did not err by sustaining defendants' demurrers to the causes of action for breach of oral and implied contract and breach of the covenant of good faith and fair dealing.

### E. *Plaintiff abandoned his rescission cause of action*

Plaintiff asserted a cause of action for rescission in his original complaint, the first amended complaint, and the corrected first amended complaint. After defendants' demurrer to the corrected first amended complaint was sustained, with leave to amend, plaintiff thereafter failed to include a rescission cause of action in any of his subsequently filed amended complaints. He accordingly abandoned his rescission cause of action and forfeited any claim of error with regard to that cause of action. (*Cochran v. Cochran*

18

(1997) 56 Cal.App.4th 1115, 1119; see also *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861.)

## VI.  Denial of leave to amend

Plaintiff fails to suggest how he would amend his fifth amended complaint to correct the defects discussed above.  The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The trial court therefore did not abuse its discretion by sustaining the demurrers without leave to amend.

**DISPOSITION**

The judgment is affirmed.  Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST